GRANT OAKMAN *vs.* JAMES F. BELDEN, and another.

Kennebec.    Opinion June 30, 1900.

*Husband and Wife.    Action.    Alienation.    Evidence.*

A parent may not with hostile, wicked or malicious intent break up the relations between his daughter and her husband. He may not do this simply because he is displeased with the marriage, or because it was against his will, or because he wishes the marriage relation to continue no longer. But a parent may advise his daughter in good faith and for her good, to leave her husband, if he, on reasonable grounds believes that the further continuance of the marriage relation tends to injure her health, or to destroy her peace of mind, so that she would be justified in leaving him. A parent may, in such case, persuade his daughter. He may use proper and reasonable arguments. Whether the motive was proper or improper is always to be considered. Whether the persuasion or the argument is proper and reasonable, under the conditions presented to the parent's mind, is also always to be considered. It may turn out that the parent acted upon mistaken premises or upon false information, or his advice and his interference may have been unfortunate;—still, if he acts in good faith, for the daughter's good, upon reasonable grounds of belief, he is not liable to the husband.

In an action where a husband sought to recover from his wife's parents damages for the alienation of her affections, the court gave an instruction to the jury, in substance, that, "if the separation of the plaintiff's wife from him was the result of the active interference of the defendants, either by threats, persuasion or arguments, then the defendants were liable." *Held;* that the instruction placed upon the defendants a much more grievous burden of justification than parents ought to be compelled to bear, and is erroneous.

ON MOTIONS AND EXCEPTIONS BY DEFENDANTS.

Action on the case for alienating the affections of the plaintiff's wife by the defendants, who are her parents. The plea was the general issue. The action was tried to a jury in this court below at the October term of 1899, in Kennebec County, when the jury returned a verdict of $1154.00 for the plaintiff.

The case appears in the opinion.

*Jos. Williamson, Jr., and L. A. Burleigh,* for plaintiff.

*S. S. and F. E. Brown,* for defendants.

SITTING: WISWELL, C. J., HASKELL, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

SAVAGE, J.   Action on the case by husband for the alienation of the affections of his wife by her parents, who are the defendants.   The plaintiff obtained a verdict.

The plaintiff claims that the defendants unjustifiably interfered in his domestic affairs, and with intent to break up the harmonious and affectionate relations existing between him and his wife, wrongfully enticed, advised and persuaded her to leave him, which she did.   The defendants, on the other hand, deny that they persuaded their daughter to leave her husband, and they claim, in addition, that such was the daughter's age and condition of health, and such was the plaintiff's cruel and abusive conduct towards her, endangering her health and destroying her peace of mind, they were justified in doing all that the evidence for the plaintiff tends to show that they did, even assuming it to be true.   It is admitted that the marriage was clandestine, and against the will of the defendants, and that the wife returned to their home, not later than three weeks after the marriage, and has since remained there.

The jury were instructed that if the separation of the plaintiff's wife from him "was the result of the active interference of the parents," if they "put in their oar," and if "the wife would have gone back if it had not been for their interference, either by threats, persuasions or arguments, . . . . they have done him a wrong, and he is entitled to compensation for that wrong." To this instruction the defendants except, and we are now to inquire whether this instruction was correct in view of the evidence and the contentions of the parties.

Whoever wrongfully interferes in the relations of husband and wife, and entices the wife to leave the husband, is liable to him in damages.   While a stranger may, without liability, harbor a wife who has left her husband, he may not persuade her to leave him, or not to return to him.   Though she may have just grounds for a separation, yet she may choose to return, and a stranger has no right to intermeddle, and if he does so voluntarily, he must answer

the consequences.  *Modisett* v. *McPike*, 74 Mo. 636.  But it is universally conceded that a parent stands on different ground. Though the wife has gone out from the parental home, and has joined her husband "for better, for worse," and though she owes to him marital allegiance, and he possesses the first and the superior right to her affection and comfort and society, it is nevertheless true that the parental relation is not ended, nor has parental affection and duty ended.  A husband may be false to his marital obligations, he may be immoral and indecent, he may be grossly cruel and abusive, he may become a confirmed drunkard, his conduct towards her may be such as to endanger health, and entirely destroy peace and comfort, so that she may properly leave him.  In such case to whom shall she fly, if not to her parents?  And from whom shall she seek advice if not from her parents?  And such advice may, we think, be enforced by reasonable arguments.  A parent may not with hostile, wicked or malicious intent break up the relations between his daughter and her husband.  He may not do this simply because he is displeased with the marriage, or because it was against his will, or because he wishes the marriage relation to continue no longer.  But a parent may advise his daughter, in good faith, and for her good, to leave her husband, if he, on reasonable grounds, believes that the further continuance of the marriage relation tends to injure her health, or to destroy her peace of mind, so that she would be justified in leaving him.  A parent may, in such case, persuade his daughter.  He may use proper and reasonable arguments, drawn, it may be, from his greater knowledge and wider experience.  Whether the motive was proper or improper is always to be considered.  Whether the persuasion or the argument is proper and reasonable, under the conditions presented to the parent's mind, is also always to be considered.  It may turn out that the parent acted upon mistaken premises, or upon false information, or his advice and his interference may have been unfortunate; still, we repeat, if he acts in good faith, for the daughter's good, upon reasonable grounds of belief, he is not liable to the husband.

This conclusion is supported by the authorities.  Chancellor Kent in *Hutcheson* v. *Peck*, 5 Johns. 196, said:  "A father's

house is always open to his children; and whether they be married or unmarried, it is still to them a refuge from evil, and a consolation in distress. Natural affection establishes and consecrates this asylum. . . . . I should require, therefore, more proof to sustain the action against the father, than against a stranger. It ought to appear either that he detains the wife against her will, or that he entices her away from her husband from improper motives. Bad or unworthy motives cannot be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed. This principle appears to me to preserve, in due dependence upon each other, and to maintain in harmony, the equally strong and sacred interests of the parent and the husband. The quo animo ought then, in this case, to have been made the test of inquiry and the rule of decision."

In the well considered opinion in *Bennett* v. *Smith*, 21 Barb. 439, Strong, J., for the court, said: "When the conduct of a husband is such as to endanger the personal safety of his wife, or is so immoral and indecent as to render him grossly unfit for her society, so much so that she would be justified in abandoning him, her parents ought, and I have no doubt have the right, not only to receive her into, and allow her the comforts of their house, which even a stranger may do in such a case, but also to advise her to come and remain there. . . . And the same doctrine is applicable, in my judgment, to a case where the advice is given by a parent in the honest belief, justified by information received by him, that such circumstances exist, although the information may subsequently prove to have been unfounded. It is enough for his protection that he was warranted in such belief, and acted from pure motives." *White* v. *Ross*, 47 Mich. 172; *Tasker* v. *Stanley*, 153 Mass. 148.

It was held in *Holtz* v. *Dick*, 42 Ohio St. 23, that "if the motive of the intervening person (a parent) was pure and the appearances seemed to indicate necessity for interference, there can be no recovery, though no occasion for interference really existed." "Much will be forgiven the parents of a wife," the court say, "who honestly interfere in her behalf, though the interference was

wholly unnecessary, and may have been detrimental to her interest and happiness as well as that of her husband; still when the motive was, not the protection of the wife, but hatred and ill-will of the husband, it is no answer to his action that the offenders were his wife's parents." *Rabe* v. *Hanna*, 5 Hammond (O.) 530; *Gernerd* v. *Gernerd*, 185 Pa. St. 233; *Lockwood* v. *Lockwood*, 67 Minn. 476.

Some authorities seem to hold that the intent alone of the parent is decisive. In a recent Mississippi case it is said, "the question must always be, was the father moved by malice, or was he moved by proper parental motives for the welfare and happiness of his child? In his advice, and in his action, he may have erred as to the wisest and best course to be taken in dealing with a question so delicate and so difficult, but he is entitled in every case to have twelve men pass upon the integrity of his intentions." *Tucker* v. *Tucker*, 74 Miss. 93; 32 L. R. A. 623.

"The action for seducing the wife away from the husband is by no means confined to the case of improper and adulterous relations; but it extends to all cases of wrongful interference in the family affairs of others whereby the wife is induced to leave the husband. . . . . If, however, the interference is by the parents of the wife, or an assumption that the wife is ill-treated to an extent that justifies her in withdrawing from her husband's society and control, it may reasonably be presumed that they have acted with commendable motives, and a clear case of want of justification may be justly required to be shown before they should be held responsible." Cooley on Torts, 2nd Ed. p. 264.

After citing with approval the words of Chancellor Kent, in *Hutcheson* v. *Peck*, supra, Mr. Schouler says:—"But this does not justify even a parent in hostile interference against the husband; and the father must give up his daughter whenever she wishes to return, unless the proper tribunal has decided otherwise; though he might, we suppose, by fair arguments, urged to promote her true good, seek to persuade her from returning. The legal doctrine seems to be this, that honest motives may shield a parent from the consequences of indiscretion, while adding nothing to the right of actual control; the intent with which the parent acted being the

material point rather than the justice of the interference." Schouler's Domestic Relations, 3d Ed. § 41.

In the instruction complained of in the case at bar, the jury were told in substance, that if the separation of plaintiff's wife from him was the result of the active interference of the defendants, either by threats, persuasion or arguments, then the defendants were liable. This instruction, unqualified as it was, was erroneous, and placed upon the defendants a much more grievous burden of justification than parents in such cases ought to be compelled to bear.

It is unnecessary to consider the remaining exceptions further than to say that we perceive no error in the rulings complained of.

*Exceptions sustained.*