BOLAND *v.* STANLEY.

Opinion delivered January 4, 1909.

1.   HUSBAND AND WIFE—ALIENATION OF WIFE'S AFFECTIONS—LIABILITY OF JOINT TORTFEASORS.—Where two persons were sued by a husband for enticing away his wife and alienating her affections from him, it was error to instruct the jury that both of the defendants were liable if either of them aided or assisted in enticing away plaintiff's wife. (Page 568.)

2.   SAME—LIABILITY FOR ENTICEMENT OF WIFE.—Whoever, without justifiable cause, entices away a wife and alienates her from her husband commits an actionable wrong against the husband's rights.   (Page 569.)

3.   SAME—ALIENATION OF WIFE—GOOD FAITH.—In an action for alienating a wife's affections it is always a material consideration whether or not there were malevolent or improper motives.   (Page 569.)

4.   SAME—ENTICEMENT OF WIFE—BURDEN OF PROOF.—If a stranger in blood by advice or enticement induces a wife to leave her husband, or takes

her away with or without her consent, and encourages her to remain away from him, or harbors and protects her while doing so, the burden is on him to show good faith. (Page 569.)

5. SAME.—In an action by a husband against his wife's father for enticing away his wife and alienating her affections, bad or improper motives on the father's part will not be presumed, but they must be positively shown or necessarily deduced from the facts and circumstances detailed. (Page 569.)

6. SAME—VOLUNTARY ABANDONMENT BY WIFE.—Where a wife abandons her husband without enticement or inducement from a third person, no cause of action for civil damages arises against such person for alienation of her affections. (Page 570.)'

7. SAME—ALIENATION OF WIFE'S AFFECTIONS—EVIDENCE.—Where a husband sues his wife's father and a stranger in blood jointly for alienating his wife's affections, statements of the wife after she left plaintiff and returned to her father's home are inadmissible to explain the causes of leaving her husband. (Page 570.)

8. APPEAL AND ERROR—EXCLUSION OF EVIDENCE—PREJUDICE.—The error of excluding a statement of a witness will not be considered on appeal if appellant did not offer to show what the statement was, in order that it might be seen whether it was competent or relevant. (Page 571.)

Appeal from Little River Circuit Court; *James S. Steel,* Judge; reversed as to one of appellants.

STATEMENT BY THE COURT.

The appellee sued appellants, J. T. Boland and W. H. Robinson, alleging: "That Era Stanley is and at all the times hereinafter mentioned was the wife of this plaintiff. That on or about the 7th day of November, 1906, while the plaintiff was living, cohabiting with and supporting her at Winthrop, and while they were living together happily as man and wife, the defendants, wrongfully contriving and intending to injure the plaintiff and to deprive him of her comfort, society and assistance, maliciously, wilfully and wickedly induced her away from the plaintiff's and her then residence in the town of Winthrop in Little River County, Arkansas, and, after so inducing her away from her and plaintiff's residence, forcibly seized her and by force carried her to the residence of the defendant, J. T. Boland, in Little River County, and have ever since said date forcibly detained plaintiff's said wife and harbored her against the consent of this plaintiff and have alienated the affection of plaintiff's said

wife from him and caused her to become dissatisfied with her married state. That by reason of said acts the plaintiff has been and still is wrongfully deprived by the defendants of the comfort, society and aid of his said wife, and has suffered great distress of both mind and body in consequence thereof and great discomfort, inconvenience and anxiety, and will continue to so suffer, all to his damage in the sum of $10,000. And the plaintiff says that by reason of said wilful, malicious and wicked acts this plaintiff is entitled to $10,000 as exemplary or punitive damages against said defendant."

The answer of appellant denied all the material allegations of the complaint, and set up that plaintiff's wife of her own free will and accord left plaintiff on the 7th day of November, 1906, and came to her father's house, J. T. Boland, where she has since resided and made her home, and that no one has persuaded her or induced plaintiff's wife to live separate and apart from him, and that no one has alienated or attempted to alienate her affections from him.

The evidence on behalf of appellee tended to show that appellee on the 4th of November, 1906, married Era Boland, the daughter of appellant, J. T. Boland. Appellee married at his father's house about 11 o'clock Sunday night. He remained with his wife at his father's house for a few days. The next day after the marriage he and his wife went to the house of one Grider, a neighbor. While there, appellant Boland came and said to his daughter: "Era, I have come to bring you a letter from your dear old father, the last one you will ever get from him. You are laughing on one side of your face today, but you will be laughing on the other side tomorrow." He gave the letter to his daughter, and said to appellee: "Young man, don't say anything to me; don't say a word. I could eat three like you before night." He remained about five minutes. After he left appellee read the letter. Its contents were as follows: "Era, you have played hell with your ducks—you are laughing on one side of your face today, but you will be laughing on the other side tomorrow. I don't want you to ever come inside of my yard again, not even in sickness or death. Don't you ever speak to your sisters or your brothers again. You have disgraced yourself, and you are no more your father's child."

The day after the marriage appellant Robinson went to a near neighbor of Boland, and asked him what he thought of Era's marriage, and said something about Miss Era disgracing herself by taking Stanley. He said Mr. Boland would try to get her back, and that he was going to do all he could to help him. Robinson often went to Boland's house. They were musicians, and made music together. Robinson was at Boland's house Tuesday night after the marriage. Wednesday morning he went back to Boland's. Robinson and Boland's wife, oldest daughter and little boy went in Boland's wagon over to Stanley's, where appellee lived. Boland was at home when they left to go to Stanley's, and he was there when they returned. When they reached Stanley's, they stopped the wagon at the gate about fifty yards from his house. Robinson went into the house, and told appellee's wife that her mother was out there and wanted to see her. Mrs. Stanley went out to the wagon and talked to her mother and sister and Mr. Robinson. Then they carried her back into the house. Robinson had her by one arm and her sister by the other. Robinson was holding her up. When she got into the house, she lay on the bed crying. Her mother and sister gathered up her things in the house. Then Robinson raised her up off the bed and took her off. They took her by the arms and led her out to the wagon. She got in the wagon. When Robinson took her up to carry her to the wagon, she did not resist in any way or act like she did not want to go. She sat on the back seat in the wagon between her mother and sister. The little brother and Robinson sat on the front seat, and drove the wagon. Just as the wagon was leaving, Stanley came up. They met him fifteen or twenty steps from the gate. As they drove away, Stanley's wife hallooed back to him, and said she was going home to get her things.

A witness who saw them pass the house in the wagon going towards Boland's stated that Mrs. Stanley looked like she had been crying, that her appearance, conduct and words indicated that she was sad and dejected. The appellee testified that his wife lived with him from Sunday night when they were married till Wednesday when they came and took her away; that she seemed to be as happy as she could be. She was that way Wednesday morning when he left the home for his work making ties.

They had talked about keeping house on Tuesday night, and the next day he was going to get a housekeeping outfit and move to themselves. He returned from his work Wednesday morning between eleven and twelve o'clock and saw, as he came up, his wife going off in the wagon with Robinson and the Boland folks. He understood from what she said to him as they drove off that she was going home after her things. When he went into the house, he found that the few things she had there were gone. Then he first discovered that she was leaving him. He went to a neighbor's, and asked him to go over there. He did not get her to come back. He didn't go over to Boland's himself, because he was warned several times not to go over there. He tried several times to get some one to go with him, but they would not go. He had not seen his wife since that time to speak to her, had seen her with her father and sisters but never alone. Appellee was twenty years old when he married. He loved his wife, and he says she seemed to love him. He sent some of his relations over to Boland's to get his wife to come back. He wanted to talk to his wife after she left, but could not get the chance.

On behalf of appellants, appellant Boland testified that he had done nothing to induce the wife of Stanley to return to his (Boland's) house, or to induce her to stay there. After his daughter ran away, he went up there and gave her a letter and talked to her, and told her never to come back home any more and told her under no circumstances would he ever forgive her for doing like she did. He never spoke to her about coming home at any time. Since she came home, she had been just like she always was, occupied the same room, and everything just like she was before. When he saw his daughter return, he was surprised. "It was like a clap of thunder from a clear sky." "She came back home on her own consent." The young man, Stanley, had never said anything to him about the girl coming back.

Appellant Boland was asked the following question, "Did she (meaning his daughter) make any statement to you, after she returned to your house, as to why she returned?" Appellee objected, and the court sustained the objection, and excluded all statements of plaintiff's wife after she returned to the home of her father. Appellants duly excepted to this ruling of the court.

The verdict and judgment were in favor of appellee against the appellants in the sum of six hundred and thirteen dollars. This appeal has been duly prosecuted.

*Stevens & Stevens,* for appellant.

If the fact that appellant's daughter remained at his home is to be considered as evidence against him, the daughter should be allowed to speak. The *res gestae* is admissible. 34 Am. Dec. 469; 14 S. W. 1085; 4 Elliott on Evidence, § 1648. The exclusion of the evidence was error. 38 Law. Ed., U. S. Rep. 292; 1 Thompson on Trials, § 704. Judgment for alienating a husband's affections can not be sustained on mere evidence that defendant disliked plaintiff and took occasion to show it in petty ways. 81 N. W. (Ia), 788; 80 N. W. (Minn.), 950; 8 Okla. 124.; 147 Mo. 387; 20 Wash. 266. Guilt of the parents is not to be presumed from the fact that their daughter leaves her husband and lives with them at their home. 21 Ark. 77. On the contrary, worthy motives are to be presumed. 21 Ark. 77; 98 N. W. 683; 13 Hun, 204; 29 N. Y. Supp. 37; 5 Johns. 196; 106 Ga. 130; 32 S. E. 78; 48 N. H. 211; 97 Am. Dec. 605; 27 Conn. 414; 24 Tex. 426; 60 Kans. 697; 57 Pac. 942; 74 Miss. 93; 19 So. 955; 32 L. R. A. 623; 124 N. C. 19.; 32 S. E. 320; 70 Am. St. Rep. 574; 34 Ohio St. 621.; 32 Am. Rep. 397; 51 Am. St. Rep. 310. The gravamen of the offense is the alienation with malice. 52 Am. Rep. 385; 10 L. R. A. 468. The burden of proof was on the plaintiff. 98 N. W. 683; 13 Hun, 204; 9 Misc. (N. Y.), 196; 40 Am. St. Rep. notes, p. 849; 51 Am. St. Rep. 310; 32 Am. Rep. 397; 21 Ark. 77; 70 Am. St. Rep. 574.

*J. T. Cowling* and *B. J. Stewart,* for appellee.

An exception to several instructions in gross will not be considered if any one of them be good. 28 Ark. 8; 32 *Id.* 223; 38 *Id.* 528; 39 *Id.* 337; 50 *Id.* 348; 54 *Id.* 16; 59 *Id.* 312; *Id.* 370; 60 *Id.* 250. The wife's parents are liable in damages for enticing away their daughter from her husband. 15 Am. & Eng. Enc. of L. (2 Ed.), 762. Rodgers on Dom. Rel. 177. The burden is upon the defendant to explain his conduct in inducing plaintiff's wife to leave him. 1 Enc. Ev. 762. A general exception to the court's refusal to give several instructions collectively will not be considered on appeal if any of them is bad. 75 Ark. 181.

WOOD, J., (after stating the facts.) We find no error in the rulings of the court in giving and refusing prayers for instructions, except in adding the modification to appellants' prayer number nine. The instruction as modified and given is as follows: "The court instructs the jury that the acts, conduct and words of Mrs. J. T. Boland and daughter in enticing and inducing plaintiff's wife to abandon him, if you find that said persons did anything to entice plaintiff's said wife from him, would not bind the defendants unless you further find from the evidence that said Mrs. J. T. Boland and daughter acted under and by instructions of defendants, J. T. Boland and W. H. Robinson; and the burden of proving such fact is on the plaintiff, unless you further find that either of the defendants was present aiding or abetting said parties in said acts."

The last paragraph was added as a modification.

The effect of this instruction was to tell the jury that if either defendant Robinson or Boland was present aiding or abetting Mrs. J. T. Boland and daughter in enticing appellee's wife to abandon him, if they did entice her to do so, this would render Robinson and Boland both liable. The uncontroverted proof showed that defendant Boland was not present aiding and abetting Mrs. Boland and her daughter in whatever may have been done by them, if anything, in enticing or taking away appellee's wife from her home. The undisputed evidence shows that Robinson alone was present on that occasion, and Boland, unless there was a conspiracy between him and Robinson to entice or take away appellee's wife, could not be held liable for the conduct of Robinson which took place in Boland's absence. The court, by giving the instruction, virtually assumed that there was such a conspiracy. But that was a question of fact for the jury to determine. The added amendment was also well calculated to mislead the jury as to the burden of proof. For adding the amendment told the jury, in effect, that if either of the defendants was present aiding Mrs. Boland and her daughter, then the burden was on both of the defendants to show that Mrs. Boland and her daughter did not act under and by their instructions. It is suggested by learned counsel for appellee that the ninth instruction is not copied as amended, and that it is impossible to tell how it read after it was amended. We have copied the

prayer as it appears in the bill of exceptions. Then follows the recital: "The court refused to give this instruction, but added an amendment to the same which amendment reads as follows:" Then the amendment as set out above is copied. The reasonable construction of this language is that the amendment was added at the conclusion of the prayer. But whether so added or inserted anywhere in the prayer, the amendment so qualified the other language of the first paragraph as to render it misleading and prejudicial as to Boland. The prayer as asked was correct, but the amendment was error.

The loss of what is termed in law *"consortium,"* that is, the society, companionship, conjugal affections, fellowship, and assistance of the wife, is the principal basis for actions of this kind. Tiffany's Persons and Domestic Relations, p. 75 and authorities cited in note. 15 Am. & Eng. Enc. Law (2 Ed.), 862 (b), note 6. Whoever invades the hallowed precincts of a home, and, without justifiable cause, by any means whatsoever severs the sacred tie that binds husband and wife, alienating her affections from him, and depriving him of the aid, comfort and happiness of a loyal union between them, is liable in civil damages for his wrongful conduct. Rodgers, Dom. Rel., § 177; Schouler's Dom. Rel., § 41; Tiffany, Per. & Dom. Rel. 74; 15 Am. & Eng. Enc. Law, 862. In such cases whether or not there were malevolent or improper motives is always a material consideration. In case of a stranger in blood the causes must be extreme that will warrant him in interfering with the relation of husband and wife. If he by advice or enticement induces a wife to leave her husband, or takes her away with or without her consent, and encourages her to remain from him, or harbors and protects her while away from him, he does these things at his peril, and the burden is on him to show good cause and good faith for his conduct. As is said by Mr. Rodgers: "It would seem upon principle to be rare indeed if the motive by a stranger in breaking up a family could be a good one." Rodgers, Dom. Rel., § 176; 1 Jaggard on Torts, 467; Tiff. Per. & Dom. Rel. 76 Schouler, Dom. Rel. 41, and cases cited by these. But the rule is different in case of a parent. In *Hutcheson* v. *Peck,* 5 Johns. N. Y. 196, where a' father harbored his daughter, Chancellor Kent says: "A father's house is always open to his children, and, whether they be mar-

ried or unmarried, it is still to them a refuge from evil and a consolation in distress. Natural affection establishes and consecrates this asylum. * * * I should require, therefore, more proof to sustain the action against the father than against the stranger. It ought to appear either that he detains the wife against her will, or that he entices her away from her husband from improper motives. Bad or unworthy motives can not be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed." See *Burnett* v. *Burkhead,* 21 Ark. 77; *Trumbull* v. *Trumbull,* 98 N. W. 683; *Payne* v. *Williams,* 4 Bax. (Tenn.), 585, and other cases cited in Tiffany's Persons & Domestic Rel., p. 77, note 116; *Brown* v. *Brown,* 124 N. C. 19; *Glass* v. *Bennett,* 89 Tenn. 478, and cases cited. Parents will not be protected under the above doctrine unless they acted from proper motives. *Holtz* v. *Dick,* 42 Ohio St. 23. In actions of this character "the term malice does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions the injury. If the conduct was unjustifiable, and actually caused the injury complained of, malice in law would be implied." The terms "malice" and "improper motives," as here used, mean the same thing. *Brown* v. *Brown, supra;* Tiffany's Persons & Dom. Rel. 76. If no enticements are held out to the wife to leave her husband or to cease to love him, and nothing is said or done by a third party to cause her to abandon him, her act being of her own accord and for reasons best known to herself, then there is no cause of action for civil damages against any one for alienation of affections. For in such case the estrangement would be voluntary, and not the fault of any third party. Rodgers, Dom. Rel. p. 134, and cases cited. Instructions presenting these principles of the law were given by the court, and the charge upon the whole, except in the particular wherein the error has been pointed out, correctly submitted the issues to the jury.

The court did not err in excluding all statements of the plaintiff's wife after she returned to the home of her father. In cases where parents are defendants alone, and the alienation not a single act of removal from her home, but a continuing one after such

removal to her parents' home, declarations of the wife of plaintiff, after taking up her residence with her parents, are generally admitted, as such evidence is regarded as explanatory of the causes for her residence with them, and is the only means of showing such relations except calling her as a witness, and that is not permissible. 3 Elliott's Evidence, § 1648, and cases cited. However, such declarations are admitted in suits against the parents as an exception to the general rule which excludes them as hearsay. 3 Elliott's Evidence, *supra.*

But here another is sued as joint tort feasor with the parent. Moreover, appellants did not offer to show what the statements of appellee's wife were. In the absence of such offer, it could not be seen that the evidence was competent or relevant, and hence no error is discovered in its exclusion. 1 Thompson on Trials, § § 703-4. See also *Meisenheimer* v. *State,* 73 Ark. 407.

For the error indicated reverse and remand for new trial, as to appellant Boland. As to appellant Robinson, the instruction was not prejudicial error, and the judgment as to him is affirmed.