[Civ. No. 2595.   Third Appellate District.—November 21, 1923.]

## T. D. SMITH, Respondent, v. LOUIS MITCHELL, Appellant.

[1] ALIENATION OF AFFECTIONS — ACTION BY HUSBAND AGAINST STRANGER — INDUCEMENT OF WIFE TO LEAVE — INTENT — PROOF — ERRONEOUS INSTRUCTION.—In an action by a husband against a stranger in blood to the former's wife for damages for the alienation of said wife's affections, it is error to instruct the jury to the effect that it is not enough for plaintiff to prove that defendant intentionally and wrongfully induced plaintiff's wife to leave plaintiff, but he must further prove that defendant acted maliciously in so doing.

[2] ID.—STRANGER NOT "INTERESTED"—RIGHT TO INTERMEDDLE.—The defendant in such action, being a stranger in blood to plaintiff's wife, was not "interested" in her marital affairs, in the sense in which that word is used in section 47 of the Civil Code, and he was not privileged to intermeddle voluntarily therein.

[3] ID.—REQUESTED ADVICE—MALICE—INFERENCES.—Had any advice which defendant may have given plaintiff's wife been given at her request, then, under section 48 of the Civil Code, malice could not be inferred from the fact that he gave the advice; but when a stranger wrongfully volunteers to advise or encourage one party to a marriage to leave the other, malice may be inferred without further proof.

[4] ID.—INDUCEMENT TO GIVE PERJURED TESTIMONY—PREVENTION OF FAIR TRIAL.—When one party to an action induces a witness to give perjured testimony in matters material to the case he thereby prevents the other party from having a fair trial.

[5] ID. — NEW TRIAL — GROUNDS — APPEAL. — The fact that the trial court granted a new trial on other grounds does not preclude the appellate court from affirming the order on the ground of defendant's misconduct.

APPEAL from an order of the Superior Court of Tulare County granting a new trial. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. F. Gill, G. W. Zartman and Farnsworth, McClure & Burke for Appellant.

Russell & Heid for Respondent.

FINCH, P. J.—Plaintiff sued to recover damages for the alienation of his wife's affections by defendant. The jury returned a verdict in favor of defendant and judgment was entered accordingly. Plaintiff moved for a new trial upon the following grounds, among others: "1. Irregularity of the proceedings of the court, jury and adverse party, to wit, the defendant, by which the plaintiff was prevented from having a fair trial. . . . 7. Error in law occurring at the trial and excepted to by the party making the application." The court granted the motion "upon the ground of errors in the instructions given to the jury by the court." This appeal is from the order granting a new trial.

The evidence is sufficient to sustain a judgment for either party. In view of the necessity of a new trial the evidence

---

3. Malice as essential to an action for alienation of affections, in absence of meretricious relations, note, 46 L. R. A. (N. S.) 465.

4. Authorities discussing question of perjury as ground for new trial, note, 51 L. R. A. (N. S.) 286.

will not be discussed further than is necessary to an intelligent understanding of the questions of law involved. The plaintiff and his wife and their three little children were living on a ranch belonging to defendant, who was boarding with them. The plaintiff became jealous because of the relations, real or imaginary, between his wife and defendant, resulting in domestic quarrels and culminating in the separation of plaintiff and his wife on the 17th of June, 1921. Shortly thereafter Mrs. Smith went to her former home in Oklahoma. The defendant furnished Mrs. Smith with money to go to Oklahoma and sent her money while she was there. A few weeks after Mrs. Smith left the plaintiff found a letter, inclosed in a sealed envelope, near the postoffice at Tipton, California, addressed to Mrs. Smith at Carney, Oklahoma. The letter was dated July 7, 1921, and was signed "L. M." Inclosed with the letter was a money order, dated July 7, 1921, designating Mrs. Smith as payee and the defendant as remitter. The contents of the letter were such as to indicate that the plaintiff's suspicions concerning the relations between his wife and the defendant were well founded. Thereafter, on August 5, 1921, this action was commenced. In October, 1921, Mrs. Smith left Oklahoma for California in company with her sister and the latter's husband. They came through in an automobile and arrived in California about three weeks before the trial of the action, which was commenced November 29, 1921. Mrs. Smith was the most important witness for defendant at the trial. She denied the material parts of her husband's testimony and testified that defendant had in no manner influenced her conduct toward her husband or caused her to lose her affection for him. Her testimony was, in effect, that she had lost her affection for plaintiff by reason of his cruel and abusive treatment of her.

At the hearing of plaintiff's motion for a new trial the affidavit of Mrs. Smith was admitted in evidence. She therein stated "that at the time of said trial she was under the dominion and influence of the defendant to such an extent that at said time by reason of the persuasion, promises and influence of the defendant to and for her, she testified at said trial to facts material to said issue that were not true and in particular as follows, to wit." Then follows a statement of the material facts testified to by affiant at the trial.

Affiant then proceeds to state that the defendant was the sole cause of her separation from her husband; that their married life had been happy and harmonious until defendant "gained her love and affection"; that defendant "promised affiant that if she would separate from her husband and obtain a divorce from him that he would place her in a more comfortable home, surrounded by luxuries than could ever be given to her by her said husband; that he promised her jewelry, a ranch and a choice of living wherever she might see fit; . . . that said Louis Mitchell gave her a gold ring; that he promised her a gold watch and chain and immediately after the trial of this action and on the day of the closing of such trial gave her such gold watch and chain thereby carrying out his promises"; that he took her to the office of an attorney to ascertain whether she could secure a divorce and promised to pay all costs of securing a divorce from her husband; that he persuaded her "to go to her people in Oklahoma and leave said plaintiff" for the "purpose of obtaining a divorce in the state of Oklahoma"; that with money furnished by defendant she went to Oklahoma and there instituted an action for divorce; that defendant sent her money to pay the costs thereof; that just prior to the separation of plaintiff and affiant the defendant expressed the desire to marry her; "that for the purpose of retaining his dominion over her and for the purpose of controlling her testimony in the trial of the above-entitled action said Louis Mitchell did prior to said trial meet affiant in the state of Arizona and there joined her on her return to California, and at such time in many conversations had between affiant and said Louis Mitchell he still insisted that he loved affiant and desired her to become his wife and that in order that he might prevail in the trial of the above-entitled action she would have to testify as she did upon the stand in said trial and that affiant on said trip and at various times up to the date of said trial agreed with said Louis Mitchell to testify falsely as she did at said trial."

A few counter-affidavits were filed to the effect that Mrs. Smith had made statements prior to the trial which were inconsistent with some of her statements in the affidavit, and her testimony given at the trial is wholly inconsistent with that contained in the affidavit, but her statements in the affidavit to the effect that defendant had induced her

to testify falsely at the trial stand without substantial contradiction. Many of the facts stated in the affidavit, from the nature thereof, must have been within the exclusive knowledge of Mrs. Smith and the defendant, yet the defendant wholly failed to deny any of them. No affidavit of the defendant was presented on the motion for a new trial. The only rational inference is that the defendant could not truthfully deny such statements.

[1] The only instruction pointed out by respondent to justify the order granting a new trial reads as follows:

"You are instructed that before you can find a verdict in favor of the plaintiff it is necessary that plaintiff prove by a preponderance of evidence and to your satisfaction that the defendant intentionally enticed plaintiff's wife away from him, and also that in doing so he acted maliciously.

"Merely giving advice to a wife, which induces her to leave her husband, is not actionable if given honestly, with a view to the welfare of both parties, by one who has no special influence or authority."

Section 49 of the Civil Code provides: "The rights of personal relations forbid . . . the abduction or enticement of a wife from her husband." The definition of the word "entice," as given in 15 Cyc. 1054, is "to allure to ill, to attract, to seduce, to coax. A word which may import an initial, active, and wrongful effort." It is apparent that the word "enticement," as used in section 49, imports wrongful conduct. The effect of the instruction given, therefore, is that it is not enough for the plaintiff to prove that the defendant intentionally and wrongfully induced Mrs. Smith to leave plaintiff, but that he must further prove that defendant acted maliciously in so doing. Defendant is a stranger in blood to Mrs. Smith. Section 47 of the Civil Code provides: "A privileged publication is one made. . . . 3. In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." Section 48 provides: "In the cases provided for in subdivisions three, four, and five, of the preceding section, malice is not inferred from the communication or publication." [2] The defendant was not

"interested" in Mrs. Smith's marital affairs, in the sense in which the word is used in section 47, and he was not privileged to intermeddle voluntarily therein. [3] Had any advice, which defendant may have given her, been given at her request, then, under section 48, malice could not be inferred from the mere fact that he gave the advice, but when a stranger wrongfully volunteers to advise or encourage one party to the marriage to leave the other malice may be inferred without further proof. The principles of law announced in sections 47 and 48 are variously expressed by the authorities in actions for alienation of affections. "The decisions require a much stronger case to be made out where the defendant is a parent of the spouse alleged to have been enticed." (*Cripe* v. *Cripe,* 170 Cal. 91, 93 [148 Pac. 520, 521].) "The privilege accorded to parents, relatives, and guardians of a spouse in their communications and conduct with reference to the marital relation does not exist in favor of strangers. In the former case advice which may lead to a separation is presumed to have been given in good faith, but in case of a stranger malice is presumed." (21 Cyc. 1620.) "In case of a stranger in blood the causes must be extreme that will warrant him in interfering with the relation of husband and wife. . . . The burden is on him to show good cause and good faith for his conduct." (*Boland* v. *Stanley,* 88 Ark. 562, 569 [129 Am. St. Rep. 114, 119, 115 S. W. 163, 165].) "While a stranger may, without liability, harbor a wife who has left her husband, he may not persuade her to leave him, or not to return to him. Though she may have just grounds for separation, yet she may choose to return, and a stranger has no right to intermeddle, and if he does so voluntarily, he must answer the consequences." (*Oakman* v. *Belden,* 94 Me. 280, 281 [80 Am. St. Rep. 396, 397, 47 Atl. 553]; 13 R. C. L. 1465.) "If a wife has good grounds for a separation from her husband, or for a divorce from him, and she voluntarily seeks the advice, shelter and protection of a stranger, and he gives her his advice and protection in good faith, and from motives of kindness and humanity, the husband cannot recover in an action for the alienation of her affections; although it would be otherwise if she would not seek the separation or sue for divorce except for the intentional and unsolicited interference of such third person inducing her so to act." (Note, 44 Am. St.

Rep. 851; *Modisett* v. *McPike,* 74 Mo. 636. See, also, note, 46 L. R. A. (N. S.) 465.) ''Where the action is against a stranger, the plaintiff need only show that it was wrongfully brought about. . . . Where the defendant is a stranger and intended to cause a separation, the burden of proof, in one sense, is upon the defendant to give a proper explanation for inducing the wife (or husband) to leave. If the advice was given honestly and for the best welfare of the parties, the defendant must show this fact.'' (Elliott on Evidence, sec. 1643.) ''The motive of the parent is presumed to be good until the contrary is proved, but where the alienation is caused by a stranger, the defendant must generally show that his conduct was actuated by proper motives.'' (Id., sec. 1645.) ''A stranger must explain his motive. . . . Whenever there is a deliberate intention of causing a separation of the husband and wife and doing a grievous wrong, without legal justification or excuse, malice or evil intent may be implied, as the very essence of malice is a disposition or willingness to do a wrongful act injuring another.'' (Id., sec. 1646.)

[4] The uncontradicted evidence presented at the hearing of the motion for a new trial was such as to entitle the plaintiff to a retrial. When a party to an action induces a witness to give perjured testimony in matters material to the case he thereby prevents the other party from having a fair trial. Since the misconduct of defendant in preventing a fair trial is shown by uncontradicted evidence, the question presented is one of law. [5] The fact that the trial court granted a new trial on other grounds does not preclude this court from affirming the order on the ground of defendant's misconduct. (*Steil* v. *Sun Insurance Office,* 171 Cal. 795, 798 [155 Pac. 72].) Plaintiff is entitled to a new trial on the ground of defendant's misconduct and also on the ground that the foregoing instruction is erroneous.

The order is affirmed.

Hart, J., and Plummer, J., concurred.