John McGlothlen, Appellant, v. Dr. F. W. Mills, Appellee.

No. 43255.

February 13, 1936.

Ralph H. Munro, for appellant.

Jaques, Tisdale & Jaques, and I. H. Tomlinson, for appellee.

Albert, J.—Plaintiff's action is in three counts. The first count, generally stated, is a count charging the defendant with criminal conversation with the wife of the plaintiff and also with alienating her affections. The same matters are, in substance, alleged in the second count.

A demurrer was sustained to the first count, and complaint is made of the ruling thereon. This complaint has no merit. The criminal conversation is alleged to have occurred some twenty years before the bringing of this action, and as to

that matter the demurrer was rightfully sustained. As to the balance of that count, covering the alienation of affections, this matter is all covered in the second count, and therefore the plaintiff is in no position to complain.

The third count was also demurred to, and the demurrer sustained, but, as to this ruling, the plaintiff has made no contention or argument whatsoever, so we give it no further attention.

Briefly stated, the facts, as shown by the record, are that the plaintiff and his wife were married on June 21, 1905. There were three boy children born to them, the youngest of whom was named George and was about 22 years of age at the time of this trial. The relation between this man and his wife during all their married life is sketchy and very unsatisfactory. There is nothing in the record to show that their married life was anything out of the ordinary other than that several times during the time they lived together the wife told the plaintiff that she was going to leave him as soon as the children reached an age where they could care for themselves.

In September, 1931, the wife left the plaintiff and went to Missouri, where she stayed a couple of weeks. Her husband went down to see her and brought her home, where she stayed and cohabited with him until some time in November following, when she left him finally. Some time later he got a divorce from her on the ground of desertion. This divorce occurred after the action at bar was commenced.

On the trial of the case, on behalf of the defendant, a witness named Maddy was introduced, who testified, over proper objection, that, after this lawsuit was commenced, he, with one of the attorneys for the defendant, went to Missouri and had an interview with Mrs. McGlothlen. This witness testifies as to certain matters told him by Mrs. McGlothlen in this interview. This testimony cannot be set out in full, but the high points are an explanation of her reasons for leaving her husband. She said that on her return in September, 1931, her husband "wanted her to go into a frameup on Dr. Mills for, I think she said ten thousand dollars. I don't remember the amount, but it is my impression that it was either five or ten thousand dollars. That was the thing that finally caused her to leave. That was the reason she gave for finally leaving him. She further said that, either before the second child was born or immediately after, her

husband ceased to care for her; and she said that (referring to her husband) he would not talk to her, would throw his arms, and walk, and do things at night, and would not talk to her, and ranted at her when he did talk, etc.; that shortly after the second boy was born she lost the greater part of her affection for her husband, and that it was his own fault that caused the loss of her affection for him entirely.'' Other testimony along this line was given by the witness as to what the wife said to him.

We are unable to see why this testimony was admissible. It consisted wholly of statements on the part of the wife referring to previous transactions and relations between these parties, and is purely hearsay testimony. The defendant insists that it was admissible to show her mental attitude, but the mental attitude rule has no application to the mental attitude of the spouse long after the time of separation and after this lawsuit had been commenced. We have held that, under certain conditions, statements and declarations made by the alienated spouse prior to the time of the separation can be admitted for the purpose of showing the mental attitude, but in no case have we held that after the separation statements or declarations of the alienated spouse were admissible on this question of mental attitude. We think, under the situation in this case, that this witness's testimony should not have been admitted, because it was purely hearsay testimony. This is the rule deducible from the following line of cases: Hall v. Cedar Rapids & Marion City Ry. Co., 115 Iowa 18, 87 N. W. 739; Battis v. Railway Co., 124 Iowa 623, 100 N. W. 543; Smith v. Rice, 178 Iowa 673, 160 N. W. 6; Moir v. Moir, 181 Iowa 1005, 165 N. W. 221; Paup v. Paup, 208 Iowa 215, 225 N. W. 251; Spangenberg v. Christian, 151 Minn. 356, 186 N. W. 700; Fratini v. Caslini, 66 Vt. 273, 29 A. 252, 44 Am. St. Rep. 843; Pugsley v. Smyth, 98 Or. 448, 194 P. 686; Lewis v. Rice, 61 Mich. 97, 27 N. W. 867; Kidder v. Bacon, 74 Vt. 263, 52 A. 322; Luick v. Arends, 21 N. D. 614, 132 N. W. 353. See, also, 22 Corpus Juris, p. 280, section 290 (c).

■■■ Complaint is made of instruction No. 7, in that it told the jury that, if more than two years prior to the filing of the petition the plaintiff's wife ceased to have affection and love for the plaintiff, either by reason of alleged alienation of her affections by defendant or for any cause, and did not thereafter have affection and love for plaintiff, then plaintiff cannot recover in this action. This instruction was given on the question of limita-

tion of the action, and we think it is a little too narrow in this respect; that love and affection are not all there is to this relation. The general rule, as stated in 30 Corpus Juris, p. 1123, is that the basis or gravamen of the husband's right of action is not the loss of his wife's services, but rather the loss of her conjugal society or consortium. The wife's right of action for alienation of the affections of her spouse rests upon the loss of his consortium. Direct pecuniary loss is not a necessary element of his right to recover. Under the doctrine in this kind of a case, consortium covers not only love and affection, but the comfort, society, companionship, fellowship, and assistance of the wife. This is a rule deducible from our own cases. Duff v. Henderson, 191 Iowa 819, 183 N. W. 475; Puth v. Zimbleman, 99 Iowa 641, 68 N. W. 895; Hardwick v. Hardwick, 130 Iowa 230, 106 N. W. 639. This seems to be the general rule in all states. See Boland v. Stanley, 88 Ark. 562, 115 S. W. 163, 129 Am. St. Rep. 114; Riggs v. Smith, 52 Idaho 43, 11 P. (2d) 358. Generally, on this subject, see 30 Corpus Juris, p. 1123.

Instruction No. 13 is also an instruction on this question of the statute of limitations, and correctly states the law as applied to this case.

The defendant, at the close of all the testimony, made a motion for a directed verdict, which was overruled. We have read this record with care, and, while the question is not before us in view of the fact that we are reversing the case, it might be said in passing that this motion for a directed verdict should have been sustained, as the plaintiff wholly failed to produce sufficient testimony to carry this case to the jury. We are making this comment for the guidance of the lower court on a retrial of this cause, in the event there be not more substantial testimony than was in this record on the previous trial.—Reversed.

DONEGAN, C. J., and RICHARDS, KINTZINGER, ANDERSON, and PARSONS, JJ., concur.