ADAMS *v.* CARRIER.

4-8574                                       214 S. W. 2d 781

Opinion delivered November 8, 1948.

Rehearing denied December 6, 1948.

*Harrelson, Harrelson & Cannon* and *Mann & Mc-Culloch,* for appellant.

*Ward & Ward* and *Norfleet & Norfleet,* for appellee.

HOLT, J.    Appellee, Roy D. Carrier, as plaintiff below, brought this suit against appellant, N. E. Adams, for damages which appellee alleged resulted to him by

reason of the unlawful alienations of the affections of his wife, Ruth Jones Carrier, by appellant. In his complaint filed January 27, 1947, he alleged in substance that he and Ruth Jones were married February 18, 1943, and were husband and wife until July 16, 1945, at which time they were divorced by a decree of the Lee Chancery Court; that appellee was overseas in World War II from April 2, 1943, to November 9, 1945; that he and his wife, Ruth Jones Carrier, lived happily as man and wife until February, 1944, at which time his wife became employed by appellant as bookkeeper and secretary at his office in Forrest City where she worked until the present suit was filed. "That from and after the month of February, 1944, to said date of July 16, 1945, the date of said divorce decree, said Ruth Jones Carrier, while wife of plaintiff, Roy D. Carrier, became infatuated with defendant, N. E. (Pete) Adams, and lost her love and affection for the plaintiff (appellee) due to defendant's attentions to her during plaintiff's absence aforesaid," and that appellant induced Ruth Jones Carrier to commit acts of adultery and immorality in violation of her marriage vows to plaintiff; that as a result of the wrongful and undue influence of appellant, he, appellant, "so alienated her affections from the plaintiff that it caused their said divorce and separation;" that appellant knew that appellee and Ruth Jones Carrier were happily married and that appellant "wrongfully, wickedly, and maliciously sought to obtain the affections of plaintiff's wife and did obtain her affections by showing her evidence of his wealth and protestations of love and induced her affections away from the plaintiff."

By reason of said facts, he prayed for damages. Appellant answered with a general denial. Upon a jury trial, there was a verdict in favor of appellee for $5,000, and from the judgment is this appeal.

For reversal, "appellant contends (a) that the trial court erred in admitting certain evidence over the specific objections of appellant; and (b) the verdict is contrary to the law and the evidence and is excessive." He further says that "practically all of these questions boil

down to the erroneous admission of incompetent testimony as to the relations between appellant and Ruth Jones Carrier, subsequent to May, 1943.''

Before considering these contentions of appellant, in view of the conclusions that we have reached in this case, it becomes necessary at the outset to dispose of appellee's contention that there is no proper bill of exceptions in this case for our consideration, and since no error appears on the face of the record, the judgment must be affirmed for this reason.

The record reflects that the judgment in the present case was rendered September 18, 1947, a motion for a new trial was filed September 27th thereafter and was presented and acted upon by the trial court October 1, 1947, and the following docket entry made: ''Motion for new trial overruled. Exceptions saved. Appeal prayed and granted. 160 days bill of exceptions.''

The transcript was filed with the clerk of this court March 12, 1948, containing the motion for a new trial and the docket entry, *supra*. Thereafter, on March 22, 1948, appellant filed with the court below a motion praying that the court enter, *nunc pro tunc*, formal order in accordance with the docket entry, *supra*, as of October 1, 1947, when said docket entry was made. The court granted appellant's motion and entered formal order *nunc pro tunc*.

It is not disputed that appellant's motion and the court's order granting same, both occurred several days after the six months period within which appellant could appeal to this court.

Appellee earnestly insists that the trial court was without power, after the expiration of the six months period for appeal, to correct the record by a *nunc pro tunc order*; that appellant is left without a motion for a new trial in the record; that we therefore have no proper bill of exceptions before us for consideration, and since no error appears upon the face of the record, the judgment must be affirmed for this reason.

We cannot agree with appellee's contention.

In the very recent case of *J. B. McKinney* v. *G. A. Bugg*, 213 Ark. 114, 209 S. W. 2d 464, from the Pike Circuit Court wherein appellee filed a motion to dismiss after the appeal period of six months had expired in a *Per Curiam* Order, we said: "12/22/47. 8392. *J. B. McKinney* v. *G. A. Bugg, et al.,* from Pike Circuit Court. Touching appellee's motion to dismiss, the respondent is allowed a reasonable time within which to apply for an order *nunc pro tunc* to correct the record—a right trial courts may exercise at any time before an appeal is ready for submission." (Supreme Court Procedure, Revised 1948, C. R. Stevenson, page 161.)

We come now to consider appellant's contention that the trial court erred in admitting incompetent and prejudicial testimony bearing upon events that happened subsequent to May, 1943, and that without this alleged incompetent testimony there was no substantial evidence upon which to base the jury's verdict.

We have reached the conclusion, after a review of the record, that appellant's contention must be sustained.

Roy D. Carrier and Ruth Jones were married February 18, 1943, and lived together for approximately twenty-five days, according to Roy's testimony, but only five days according to hers, when appellee went overseas with the military forces. No children were born to this union. Roy did not return from overseas service until about November 9, 1945. He and his wife have never lived together after he left for overseas service some time in March, 1943. In February, 1944, appellee's wife, Ruth Jones Carrier, sought and secured employment in the office of appellant, Adams, in Forrest City. Prior to her employment by Adams, we find no testimony in the record that Ruth and appellant were acquainted or knew each other.

May 31, 1945, while Roy Carrier, appellee, was on duty overseas, he filed suit in the Lee Chancery Court for a divorce against his wife, on the ground of desertion. He alleged in his complaint "that he and the defendant were intermarried here in 1943 and ever since have been

and are now man and wife; that the defendant wilfully deserted him in May, 1943, and since the day of their separation he has not lived or cohabited with the defendant; . . . that he is a resident of Lee county, Arkansas, and has been for many years and that the cause of divorce alleged herein occurred or existed in this state within five years next before the filing of this suit. . . . Premises considered plaintiff prays for an absolute divorce and for all other just and equitable relief.''

· On July, following, appellee was granted a divorce, the decree containing the following recitals: ''This cause is submitted to the court and heard upon the complaint and depositions of the plaintiff, Roy Carrier, E. M. Carrier and C. E. Carrier and the written entry of appearance of the defendant, from all of which the court finds that the parties to this action are white people and that the allegation of desertion as well as all other material allegations of said complaint are true and fully proven.''

Following the divorce, appellee remarried on May 22, 1946, and his wife, Ruth Carrier, married appellant, Adams, July 29, 1947.

It thus appears that appellee secured a divorce from his wife, Ruth, on the ground that she deserted him in May, 1943, and which the trial court by its solemn decree, granting the divorce on the ground of desertion, has found to be true.

It was necessary for appellee, to support his complaint for a divorce, by corroborating testimony. There were two corroborating witnesses, his father, E. M. Carrier, and C. E. Carrier, his brother. His father testified that his son, Roy, appellee, was the plaintiff in the divorce suit against his wife and also the plaintiff in the present case, and further that ''they (Roy and Ruth) lived together until they separated in May, 1943. Since that time they have not lived together. They never did get along so well and finally the separation. . . . I liked Ruth and would like for them to have lived together in peace. She is a good woman.''

His brother, C. E. Carrier, testified: "Think she (Ruth) left him in May, 1943. They have not lived together since the separation. They never did get along together as man and wife. They were unhappy and fussed a great deal. I have no interest in case."

While there was evidence that Ruth Carrier, appellee's wife, committed indiscretions with appellant after she first met him in February, 1944, and entered his employ, and also evidence that she and appellant were married, as above noted, yet we have confronting us the court's decree, *supra,* supported by the testimony of appellee, his father and brother, that Ruth deserted appellee in May, 1943, many months before she ever became acquainted with appellant. Whether Ruth Carrier was justified in deserting her husband or had reasonable grounds therefor in May, 1943, is not a question for our determination, since it was settled by the divorce decree, *supra.*

As we read this record, all the material testimony bearing upon the issue, in the present suit, related to happenings and events subsequent to February, 1944, when Ruth Carrier met appellant and therefore the court erred in admitting it for the jury's consideration. We do not detail this testimony for to do so it could serve no purpose.

As has been indicated, by the terms of the above decree, to which we must attach the utmost verity, Ruth Jones Carrier in May, 1943, had left and deserted her husband and thereby ceased to have any affection for him many months prior to her first acquaintance with appellant, and without any cause on the part of appellant. Appellee, plaintiff in the divorce suit and plaintiff in the instant case, may not accept the benefits of that decree, which enabled him to remarry, and refuse to accept its disadvantages which confront and estop him in the instant case. *Gleason* v. *Knapp* (1885), 56 Mich. 291, 56 Am. Rep. 388, 22 N. W. 865; *Purdy* v. *Robinson* (1909) 133 App. Div. 155, 117 N. Y. Supp. 295, 20 A. L. R., pp. 944-45.

We are not persuaded by appellee's testimony, to the effect, that the reason he did not attempt to procure a

divorce from his wife on the ground of adultery, rather than desertion, was because, "I respected my wife quite a bit . . . and couldn't bring myself to accuse her publicly of any infidelity,"—when shortly after he was remarried he changed his attitude and became willing to expose to the world the alleged adulterous acts of his wife, for the cash consideration expressed in his complaint.

In *Burnett* v. *Burkhead,* 21 Ark. 77, 76 Am. Dec. 358, in an action by a husband against his wife's father and mother for alienation of affections of his wife, it was said: "Having determined to separate from her husband (whether for or without sufficient cause does not appear from the evidence) it was natural for the plaintiff's wife to return to her father's house, and it was natural for her parents to receive her, and offer her shelter and support."

So it may be said here that there was nothing unnatural about Ruth Carrier seeking employment after she had deserted and ceased to love her husband, as above noted.

In *Boland* v. *Stanley,* 88 Ark. 562, 115 S. W. 163, 129 Am. St. Rep. 114, a suit by a husband against his wife's father and a stranger for alienation of affections, this court said: "If no enticements are held out to the wife to leave her husband or to cease to love him, and nothing is said or done by a third party to cause her to abandon him, her act being of her own accord and for reasons best known to herself, then there is no cause of action for civil damages against anyone for alienation of affections. For in such case the estrangement would be voluntary, and not the fault of any third party."

Here the undisputed proof, as we read the record, shows, insofar as appellant is concerned, no efforts were made by him or enticements held out to Ruth Jones Carrier to desert her husband or cease to love him prior to the desertion. On the contrary, the evidence conclusively shows that she deserted and abandoned her husband of

her own free will in May, 1943, before she had ever met appellant.

Accordingly, the judgment is reversed and since the cause appears to have been fully developed, it is dismissed.

WINE, J., dissenting. Fully mindful that this type of litigation is not to be encouraged, and is looked upon with disfavor in many jurisdictions, it is, nonetheless, my opinion that the facts in this record militate flagrantly against the appellant Adams and the judgment should be affirmed. It is, likewise, my opinion that the majority of this court, in reversing and dismissing this cause gave too much emphasis to the divorce complaint of the appellee, alleging that his then wife "wilfully deserted him in May, 1943." The record reveals letters abounding in endearing terms written by Ruth Carrier, appellee's then wife, addressed to the appellee, overseas, as late as April 27, 1944. In one letter dated April 27, 1944, Ruth Carrier, in addressing her then husband, Roy Carrier, wrote in part: "I got three of the nicest letters from you," and mentioning that she had been employed by Appellant Adams. It is noted that Ruth Carrier was first employed by Appellant Adams, a pin-ball and slot machine operator with a little frequented office in a secluded part of Forrest City, in February, 1944.

On October 6, 1944, Ruth Carrier addressed her then husband coolly and tersely, saying in substance that all she wanted from him was a divorce, and giving instructions as to how he should proceed in seeking a divorce. The "Soldiers' and Sailors' Civil Relief Act" was then in force, and it would have been very difficult, indeed, if not virtually impossible, for her to have proceeded as plaintiff and obtained a divorce at a time when her then husband was still overseas in the armed forces. It seems clear that while the suit for divorce was filed in the name of the appellee, Roy Carrier, as plaintiff, he, in fact, had very limited control over the entire proceedings, his then wife being the moving force. He simply acquiesced. The allegation of desertion prompted in the spirit of chivalry was pre-dated to make it meet the statutory requirements

as to maturity. It is noteworthy that the appellee went overseas in March, 1943, and while separated in the physical sense of not actually living together as husband and wife, for reasons beyond control of the appellee, they were not separated in the sense of being estranged, and even had there been a temporary estrangement I do not think it is good law to say that a temporary estrangement between husband and wife gives a third party license debauch the wife with impunity. The law should favor reconciliation between the estranged spouses and should penalize one who wrongfully prevents such reconciliation.

These dates are particularly significant: appellee went overseas in March, 1943; his then wife was employed by appellant in February, 1944; appellee's then wife continued her correspondence with him, with no indication of any estrangement, at least until April 27, 1944; on October 6, 1944, Ruth Carrier advised her then husband, the appellee here by letter of her demands for a divorce and on October 12, 1944, again urged him to comply, writing in part: "as I have said before, please don't do a lot of unnecessary writing for no matter what you say or do, I won't change my mind. . . . ."

The fact that the suit for divorce was not filed by appellee until May 31, 1945, certainly indicates that he (appellee) was not particularly desirous of a divorce.

It would serve no useful purpose to here review the testimony of witnesses as to the conduct and association of the appellant Adams with Ruth Carrier during the time of her employment by him. Suffice it to say, it was unfavorable to appellant's cause, and it will be noted that appellant Adams divorced his former wife, who testified as a witness for appellee, in September, 1945.

I am authorized to state that Mr. Justice Robins and Mr. Justice Millwee join me in this dissent.