## SLUMAN v. DOLAN.

The court will take judicial notice that certain territory of the country is sparsely settled, and distant from railroads or other communication.

A defendant engaged in railroad construction work was prevented, by reason of unavoidable accidents and his own and his son's illness, from going to the place of trial 250 miles distant in time to be at the trial until the case was partially tried. When he arrived, he was ill and hardly in a condition to properly attend to his defense. A material witness at work in his camp was absent therefrom, so that defendant was unable to take him to the place of trial. The witness had not been subpoenaed. The camp was in sparsely settled territory, and distant from railroad and other communication. Held, that the court abused its discretion in denying a new trial on the ground of accident preventing defendant from reaching the place of trial and securing the attendance of his witness.

The court will take judicial notice of the fact that jurors generally view with suspicion testimony of an interested party in the case, and attach to it much less weight than would be given to the testimony of a disinterested witness.

The rule that a new trial will not be granted because of the absence of a witness whose testimony is cumulative only does not apply where the absent witness corroborates the testimony of the party who was the principal witness in his own behalf.

(Opinion filed, Oct. 12, 1909.)

Appeal from Circuit Court, Codington County. Hon. GEORGE H. MARQUIS, Judge.

Action by A. H. Sluman against Charles R. Dolan. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

*L. W. Crofoot,* for appellant. *A Sherin,* for respondent.

CORSON, J. This case is before us on an appeal by the defendant from a judgment entered in favor of the plaintiff and order denying a new trial. The action was instituted by the plaintiff to recover damages for alleged assault and battery committed upon the plaintiff by the defendant claiming damages in the sum of $5,000. The defendant by his answer denied each and every allegation contained in plaintiff's complaint. As a further answer, the defendant alleges that the plaintiff first assaulted the defendant and was engaged in the act of beating and bruising him, and that, if this defendant struck or kicked said plaintiff or committed any of the acts alleged in the complaint, the same was necessarily committed by the defendant in self-defense in preventing and attempting to prevent an assault of the plaintiff upon his person, and that no more force and violence was used by this defendant than was sufficient to prevent such assault. On the trial the jury returned the following verdict: "We, the jury in the above-entitled action, find in favor of the plaintiff and against the defendant on all the issues, and assess his actual damages at the sum of one thousand dollars, and his exemplary damages at the sum of $——, a total of one thousand dollars." Upon this verdict a judgment was rendered in favor of the plaintiff and against the defendant for the sum of $1,000 and $85.75 costs. A motion for a new trial was made upon the minutes of the court and affidavits on the part of the defendant and counter affidavits on the part of the plaintiff, and was made upon the following grounds in substance: "First. Irregularity in the proceedings of the adverse party and of the court, by which the defendant was prevented from having a fair trial. * * * Second. Irregularity in the proceedings of the court, by which the defendant was prevented from having a fair trial, by denying the application made by the defendant's at-

torney upon affidavit made on the 16th day of May, 1907, for a continuance over the term· on account of the absence of the defendant and his witnesses, and in compelling the defendant's attorney to proceed with the trial of the case in their absence. Third. Accident which ordinary prudence could not have guarded against, whereby the defendant was prevented from reaching the place of trial and securing the attendance of his witnesses, on account of which accident the defendant was unable to reach the place of trial until after the conclusion of the plaintiff's eivdence and all other testimony was in and was unable to secure the attendance of his principle witness at all. Fourth. Newly discovered evidence material to the defendant which he could not with reasonable diligence have discovered and produced at the trial. Fifth. Excessive damages, appearing to have been given under the influence of passion or prejudice. Sixth. Error in law occurring at the trial and excepted to by the defendant, and the following is a specification of the particular errors upon which the defendant will rely." Then follows a specification of the errors of law relied on, and a notice that as to the first, second, third, and fourth grounds stated said motion will be made upon affidavits, and the last two will be made upon the minutes of the court.

In order to fully understand the affidavits hereinafter referred to, it will be necessary to make a brief statement of the facts connected with the transaction resulting in the injury to the plaintiff. It is disclosed by the evidence that the defendant resided at Aberdeen, but was engaged as contractor in constructing a portion of a railroad west of the Missouri river; that at the time stated in the complaint he was in Watertown with some 70 or 80 horses which he was moving to his grading camp on the railroad; that while in· Watertown he contracted a small bill at the livery stable of the plaintiff, which was at first presented to him by the plaintiff's son and subsequently by the plaintiff himself, at which time the difficulty occurred; that in the difficulty occurring at the time the plaintiff sustained an injury to his knee joint, by reason of which he was confined to his house for several weeks. It is claimed by the plaintiff that he was assaulted by the defendant without provocation, and that he did not strike the defendant at

any time during the difficulty, and on the trial the plaintiff pro-
duced one or more witnesses sustaining his claim.   A trial was
commenced, a jury impaneled, and the witnesses for the plaintiff
examined before the defendant reached the place of trial.   The
case was postponed on one or more occasions for a day at a time,
and it is claimed by the defendant's counsel, supported by his
affidavit, that a motion was made for a continuance, but, not
being able to communicate with the defendant, the counsel was
unable to present a very full affidavit upon said motion.   But, after
the trial, a motion for a new trial was made based mainly upon
accident and surprise, by reason of which the defendant was
unable to be present until the case was about concluded, and was
unable to have his principal witness present.

In the view we take of the case, it will only be necessary to
consider the third assignment of error, viz., the court erred in
denying the motion for a new trial on the ground of accident
which ordinary prudence could not have guarded against, as
specified in the third ground of the motion.   The facts as dis-
closed by the affidavit of the defendant are as follows:   The
defendant was at work on a grading contract west of the Missouri
river.  His camp was 168 miles west of the river and 68 miles
from Dickinson, N. D., and the only means of communication was
by mail through Dickinson.   His principal witness, Frank M.
Lyens, was at work on the grade between Cashmere and the
Missouri river, and it was necessary for him to go that way in
order to get said witness.   He had planned to be in Watertown
before the first day of the term, May 7th, to prepare for the trial.
His son (who was also a witness, though not so important a one
as Lyens) was at the camp, and the defendant was delayed in
starting on account of the illness of his son, who was thought to
have an attack of appendicitis.   As soon as he found out that he
could not get started in time, he sent a telegram to Dickinson, N.
D., to be sent to his attorney, saying that he could not reach there
until Thursday (meaning May 9th), but his son was not well
enough to leave until Wednesday afternoon, May 8th.   There had
been a heavy snowstorm, unprecedented for that time of the year,
which made the roads in an almost impassable condition.   May

9th he started, drove 20 miles, and camped for the night. His team got loose during the night, and went back nearly to camp. May 10th he went back after the team, and drove 35 miles. May 11th he drove half way to Cashmere in a snowstorm and got lost, and had to spend the night in the buggy. May 12th drove to Cashmere, and found the train gone, and none leaving until the next day. May 13th took train to Lyens' camp, but he was away and could not see him, but left word. May 14th took next train and arrived at Glenham too late to connect with the train for Aberdeen, and wired attorney that he would reach Aberdeen night of 15th. May 15th reached Aberdeen in the evening, but sick and unable to proceed that night. May 16th left Aberdeen in evening and arrived at Watertown on Friday morning, May 17th, at about 10 a. m., having been eight days on the road, a trip which he could have ordinarily made in three days. By these delays he missed his witness Lyens, and was unable to get into communication with him. His son was unable to travel and his other witness, Edwards, had disappeared, so he reached the place of trial sick and scarcely able to speak, after the evidence was practically all in and without any witnesses. The affidavit of Lyens shows how important a witness he was to the defendant. He says, in substance: That he was in Watertown, Dakota, in the month of March, 1906, and was present at the time the trouble occurred between the plaintiff and defendant, and was also present a short time before that event when the plaintiff's son presented a bill to the defendant, and heard what occurred there. That the defendant had a number of men he was instructing about tying together some 70 or 80 horses that he was starting to drive west, and, while standing near the defendant, the son of the plaintiff, Herbert Sluman, rode up on a pony and said to the defendant, "I have a bill against you," to which the defendant replied: "It's $4, I suppose," to which the said Herbert Sluman said, "No, it's $3.50." The defendant then said, "All right, sir, here's your money," and took out of his pocket a $10 bill and held it out to the said Herbert Sluman, at the same time watching the men at work with the horses; that the said Herbert Sluman then said; "I can't make the change; haven't you got the change?" to which the de-

fendant replied that he had not, but that he would stop and pay him as he passed through town. Said Herbert Sluman then said: "I want it right now, and I'll have it now, or by G——d I'll have the whole crowd of you whipped," and said Herbert Sluman galloped off on his horse, saying, "I'll have it now, or have the whole outfit of horses stopped." This affiant did not see him again. That just after said Herbert Sluman left the bunch of horses were started, and, as the defendant and this affiant passed the elevator, they stopped while the defendant made arrangements about paying a feed bill, and they then went on together up to the corner near the blacksmith shop, were this affiant stopped with the horses while the defendant went on a short distance to the Commercial House to pay a board bill. That, while the affiant was standing on the edge of the sidewalk holding the horses, the plaintiff came along and stopped, and asked this affiant where the man Dolan was, and the affiant replied that he was right near here, and would be here in a minute. The plaintiff said," I have a bill against him," and this affiant asked him if it was the bill of $3.50 that the boy had, and he said it was, and that he wanted him to pay this bill immediately. That at this time the plaintiff appeared to be very angry and excited, and his voice trembled and he spoke in an angry manner, and this affiant said to him: "You had better consider this matter and cool off a little before you speak to Mr. Dolan. He tendered the boy the money and he couldn't make the change. You seem to be quite excited and worked up about the matter." The plaintiff then said: "I'll be damned if I don't show Dolan that he ain't fooling with the boy." And the affiant again told the plaintiff that he had better cool off a little before he said anything to Dolan about it. Just at this moment the defendant came along the sidewalk from the east, and stopped where the plaintiff and this affiant were standing, and the plaintiff said to the defendant, "I have a bill against you, Mr. Dolan," to which the defendant said, "How much is it?" and the plaintiff replied, "$3.50," and the defendant said, "All right, sir, here's your money," and handed to the plaintiff a $10 bill, which he took and handed the defendant the change, and this affiant heard the defendant say to the plaintiff: "If I had

known you was going to abuse me this way, I wouldn't have handed it to you. You'd have had to wait." The affiant says that almost immediately after this remark, and after they had both put away their money, the plaintiff and defendant came to blows and both struck at each other, but so nearly together that this affiant is unable to say which made the first attempt to strike, but that the plaintiff at the outset attacked the defendant so violently that the defendant was forced backward two or three steps guarding his face from the plaintiff's blows, and the first blow that the. defendant made was a blow with his open hand on the plaintiff's face, after he had been forced back by the plaintiff's assault; that the fight lasted two or three minutes, with each party striking and guarding, but that the plaintiff struck at the defendant a great many times and more than twice as many blows as the defendant struck at the plaintiff; that the defendant, after having been pushed backwards by the plaintiff's assault, again pushed forward and regained his position upon the sidewalk, but that neither party moved more than a few feet from their original position when the fight first commenced, and, when it ceased, they were not over six or eight feet from where they were when the fight started, but had swung around and were facing in a different position. This affiant says that, when this trouble started between the plaintiff and defendant, he was standing not more than six or eight feet from them, and that there was no one else near them, and the affiant was in a better possition to see and hear than any one else. The affiant further says that, so far as he was able to judge, the assault made by the plaintiff was so violent and determined that the defendant did not use any more violence than any person would reasonably have done under the same circumstances; that, when the fight ended, the defendant was bleeding from a wound which he had received on the cheek; that there was no wound upon his cheek before this trouble occurred, and that this affiant went with the defendant into a saloon, where some one connected with the place washed the blood off, and put on some liquid court plaster. The affiant further says that from the plaintiff's conduct and language when he came to where the affiant was standing, and from his conduct while there, he appeared to

this affiant to have come down there for the express purpose of whipping the defendant. This affiant further says that he was working on the grade west of the Missouri river in May, 1907, and, when the defendant came by this affiant's camp on his way to attend the trial at Watertown, this affiant was away from the camp; that said Dolan left word for this affiant to go to the telephone and talk to him at Aberdeen on important business; that this affiant went to the telephone, but was unable to get into communication with the defendant.

It clearly appears from the affidavit of the defendant that he was prevented by reason of unavoidable accidents and the illness of his son and his own illness from going to the place of trial at Watertown, some 250 miles or more from his grading camp, in time to be at the trial until the jury had been impaneled and the case partially tried; that at the time he arrived at Watertown he was still ill and hardly in a condition to properly attend to his defense; that, by reason of the absence of Mr. Lyens from his camp, he was unable to take him along with him to the trial. It also clearly appears from the affidavit of Mr. Lyens that he was a very important witness, being as it is shown, the only person near the scene of the difficulty at the time it occurred; and had the testimony of this witness been introduced on the trial, and had the jury believed his testimony, a verdict in favor of the defendant or a very largely reduced amount of damages would probably have resulted. It is claimed by the plaintiff's counsel in his brief that the affidavit presented to the court for a continuance does not appear in the record in this case, and the facts therein stated were not sufficient to entitle the defendant to a continuance, but it appears from the affidavit of Judge Crofoot, the leading counsel for the defendant, that an affidavit was made, and through some inadvertence it was not filed, and appears to have been lost, but in an affidavit he states in substance as near as he can remember the contents of the affidavit. While under the circumstances had the defendant resided in the immediate vicinity of the trial, and his witness Lyens had resided in that locality, probably the affidavit was not sufficient to have entitled the defendant to a continuance, as no subpoena is shown to have

been served upon the witness Lyens, but, taken in view of the circumstances, the distance the defendant was from the place of trial in what the court will take judicial notice was· a sparsely settled country, distant from railroads or other communication, and the fact that the defendant knew that the witness had charge of a grading crew, where he was ordinarily expected to be found, we are of the opinion that the court in the exercise of a sound judicial discretion, while perhaps properly overruling the application for a continuance at the time it was made, should, in view of all the circumstances, have granted the defendant a new trial. The object of courts is to secure parties a fair and impartial trial of the matter in litigation, and that, when by reason of accidents such a trial has not been had, a court should liberally exercise its discretion in the interests of justice, and give the parties deprived of such trial an opportunity to obtain the same. While this court is very reluctant to interfere with the decision of the trial court in granting or refusing new trials, we are clearly of the opinion that in this case the ends of justice would have been promoted by the trial court granting the defendant a new trial in this action, and that in overruling such motion the court abused its discretion, and its order overruling the same should be reversed. McCormick Har. Mach. Co. v. Marchant, 11 Utah, 68, 39 Pac. 483; First Nat. Bank of Storm Lake v. Harwick, 74 Iowa, 227, 37 N. W. 171; Jackson v. Shapard, 69 S. W. 954, 24 Ky. Law Rep. 713; Smith v. Rawlins' Adm'r, 83 Va. 674, 3 S. E. 238; Hinman v. Hamilton Paper Co., 53 Wis. 169, 10 N. W. 160; Vannerson v. Pendleton, 8 Smed. & M. (Miss.) 452.

In the case of McCormick Har. Mach Co., supra, the Supreme Court of Utah in discussing a similar question says: "But the additional affidavits which were submitted after the trial showing the efforts of the defendants to be present in time to make their defense present a case which merits careful consideration, and it must be weighed in the light of the circumstances surrounding it, for there is no general rule which governs a case of this character. As we regard the facts presented, it seems clear that the defendants in good faith endeavored to be present at the trial, and were innocently misled and failed to be there without such

fault as should preclude them from having their day in court. We are therefore inclined to hold, under the peculiar circumstances of this case as presented by the record, and not being advised of the under-currents which may have surrounded the contentions of the parties, that the defendants made such an affirmative showing, which is in no way controverted in the record, as fairly entitles them to a new trial."

The contention of the respondent that the testimony sought to be introduced by the witness Lyens was cumulative, and therefor that a new trial could not be granted, is not tenable. It appears by the testimony of the defendant that the difficulty resulting in injury to the plaintiff was so sudden and unexpected that he is unable to detail all the circumstances connected with it; and hence Lyens, who was apparently a disinterested witness, was able more fully to give the circumstances connected with the assault than the defendant could have done. But we apprehend that the rule applicable to ordinary cumulative testimony on motions for a new trial on the ground of newly discovered evidence is not applicable as applied to a case where a party to the action is the principal witness. The rule as to cumulative evidence was adopted at a time when parties to an action were not permitted to testify as witnesses therein. It is a well-known fact, of which this court will take judicial notice, that jurors generally view with more or less suspicion the testimony of an interested party in the case, and naturally attach to it much less weight than would be given to the testimony of a disinterested witness. To say, therefore, that the question of cumulative testimony applies to testimony tending to corroborate the evidence of a party to the action constitutes cumulative testimony would often result in great injustice being done to such parties. The fact, therefore, that the testimony of Lyens would tend to corroborate the testimony of the defendant, and therefore constitute cumulative evidence within the meaning of that term as used in the cases, would, in our opinion, work great injustice.

The order denying a new trial is reversed, and the court is directed to vacate and set aside the judgment, and grant a new trial.