[Civ. No. 4013.  Third Appellate District.—February 20, 1930.]

WILLIAM ROGERS, Respondent, v. GEORGE HAINES, Appellant.

192

Richard P. Talbot for Appellant.

George E. McCutchen and Ralph H. Lewis for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for damages for the alienation of the affections of a wife. The judgment was entered upon the rendering of the verdict of a jury. ▆ A reversal is sought upon the sole ground of insufficiency of the evidence to support the judgment.

The plaintiff and Gladys Cheney were married at Jackson, California, December 10, 1922. They immediately moved to Marshfield, Oregon, where they established a home and for some time lived happily. A daughter, Betty, was born as the issue of the marriage in 1924. Mr. and Mrs. Cheney, the parents of Mrs. Rogers, lived near Ione, California, where her father was engaged in the occupation of hunting and trapping predatory animals. They had a son, named Albert, who was born in 1912. The defendant was a divorced man who lived at Ione with his mother and infant daughter as neighbors of Mrs. Rogers' parents. The defendant was engaged in raising sheep. In the summer of 1925, Mrs. Rogers visited her parents at Ione and then met and associated with the defendant. After a visit of several weeks she returned to her home at Marshfield. Mr. Haines accompanied her as far as Sacramento. About two weeks later the defendant made an excuse to drive with a new Hudson automobile up to Oregon. He claimed that he was seeking to purchase sheep. He invited Albert, the twelve year old brother of Mrs. Rogers, to accompany him and drove directly to the home of the plaintiff at Marshfield. It is evident that the pretense of seeking for sheep

was a mere subterfuge and that the journey to Oregon was prompted solely by his interest in Mrs. Rogers. This is obvious for the reason that western Oregon is not a sheep country and during the time the defendant was there he made no effort to purchase sheep. Moreover, his invitation to take the boy Albert to his sister's home indicates this was really his destination. He had never before met the plaintiff. When he arrived at Marshfield he was invited to remain as a guest at the Rogers' home. He accepted the invitation and remained for about ten days. The plaintiff was employed at the mill as a wheelwright and his occupation kept him away from home during the daytime. During this period of time the defendant was a constant companion of Mrs. Rogers, remaining at her home with her during the absence of her husband or taking her to ride in his automobile. Certain incidents clearly indicate that she exhibited undue interest in the defendant and neglected her husband. She became critical of her husband and he was an unwelcome associate in their games of cards or pleasure excursions. Finally he became suspicious of their conduct and took occasion to return to his home when he was unexpected. On one occasion he found them seated in the kitchen in earnest conference with their chairs and heads in close contact. They gave no explanation for this conduct. On another occasion he found them together in her dressing-room. She was attired only in a slip and was engaged in powdering her face while the defendant stood close by. During this visit of the defendant at Marshfield, the plaintiff once suggested that he and his wife were talking of taking a trip around the world and the defendant said: "Why don't you get a divorce and go." No occasion for the suggestion of a divorce appears in the record. Up to the time of the visit of the defendant the record indicates that Mr. and Mrs. Rogers were living happily together. The conduct of the defendant and Mrs. Rogers led to some controversy between plaintiff and his wife and she said to him: "You ain't like Mr. Haines, Mr. Haines divorced his wife." The inference is that he should do likewise. While it is true that Mrs. Rogers testified that their subsequent separation occurred because her husband was cruel and that he was engaged in bootlegging, she specified no act of cruelty and he emphatically refutes both charges. Mrs. Dalzell

testified that while she was riding with the defendant and Mrs. Rogers at Marshfield, they appeared to be very friendly toward each other and during a conversation, out of the presence of the plaintiff, Mr. Haines said "he thought Gladys should get a divorce." And again he said, "Gladys had better . . . get a divorce." When the defendant left for California, it is quite evident he attempted to persuade Mrs. Rogers to go with him. Mrs. Lucas, a neighbor at Marshfield, testified that Mrs. Rogers, in the presence of the defendant, while discussing his departure, said, "I might go home with Mr. Haines." She did not go, however, explaining that she was afraid her husband would make trouble for them. But she soon followed after him. A few months later she again made an excuse to visit her parents at Ione, during which time she frequently met the defendant. However, she returned to her home at Marshfield once more in 1927, but did not remain long. Considerable controversy arose between the spouses over the defendant. In May, 1927, without previous warning and in the absence of her husband, Mrs. Rogers packed her personal effects and left her home, never to return again. His first intimation of her intention to leave was when he came home and found her gone. Upon inquiry from a neighbor he was told his wife had left him. There was no previous quarrel or warning of her purpose to go. After about two weeks the plaintiff went to Ione to persuade his wife to return to him. He found her at her parents' home. The defendant was also there and remained for several days. The plaintiff's wife avoided him and both his father-in-law and the defendant prevented him from conversing or associating with her. During this period of time the spouses did not live together as husband and wife. The defendant again suggested to plaintiff: "Why not get a divorce and have it over." Mrs. Rogers obtained employment as a waitress at the hotel in the adjoining town of Jackson and was often taken back and forth to her work by Mr. Haines. The plaintiff testified in this regard: "Q. How did she get back from Jackson? A. Mr. Haines and Mr. Cheney took her back. Q. Did you try to go on any of those trips? A. I did, but they insisted on me not going after her." The plaintiff failed to persuade his wife to return to her home in Oregon. He testified in this regard: "Q. Did you try to get her to

come back to Oregon with you? A. Yes, I did as much as I could. I could not get any chance with Mr. Haines and Mr. Cheney (interfering) that is why; whenever she . . . come to the house she was with Mr. Haines and Mr. Cheney.'' No reason for the final separation was given by either of the parents of Mrs. Rogers, except the bare statement which Mrs. Cheney made that ''she (Mrs. Rogers) wrote me that he (Mr. Rogers) had been bootlegging and her father told me to write her to come home.'' The defendant was a close friend and in great favor with Mr. and Mrs. Cheney. It seems evident the parents were encouraging the separation.

The foregoing circumstances do not present a strong case of alienation of affections, but we are of the opinion they are sufficient to support the implied finding of the jury to the effect that the conduct of the defendant was the procuring cause of the separation of the spouses and of the alienation of the affections of plaintiff's wife.

An action for damages lies against one who wrongfully entices a wife to abandon her husband. (Sec. 49, Civ. Code.) It is not necessary to prove that the desertion was accomplished through malice on the part of the defendant. (*Smith* v. *Mitchell*, 64 Cal. App. 463, 467 [221 Pac. 964].) The term ''entice'' means to lure, induce, tempt, incite or persuade one to do a thing. It is sufficient if the conduct of the defendant which led to the separation of the spouses was intentional and wrongful. (30 C. J. 1122, sec. 974.) Less evidence is necessary to support a judgment of damages for the alienation of the affections of a wife by a stranger to the family than is required when a parent is charged therewith for the reason that a parent is recognized as entitled to the privilege of reasonably counseling and advising their children for their welfare. (*Horowitz* v. *Sacks*, 89 Cal. App. 336, 341 [265 Pac. 281]; 13 Cal. Jur. 903, sec. 87; 13 R. C. L. 1471, sec. 522.) It is no defense to an action for the alienation of the affections of a spouse, that the conduct of the defendant was not the sole cause of the separation and loss of affections. It is sufficient if the defendant's conduct was the procuring or controlling cause of the alienation of affections, although other reasons may have contributed to some extent. (30 C. J. 1125, sec. 982.) It is naturally difficult to

prove by direct evidence the purpose and effect of the defendant's conduct upon the affections of a spouse, and circumstantial evidence may therefore be sufficient to establish a case, considered in connection with the natural presumptions and inferences which may be drawn therefrom. (30 C. J. 1144, sec. 1019; *Adkins* v. *Brett*, 184 Cal. 252 [193 Pac. 251] ; *Mussellem* v. *Frenn*, 101 Okl. 45 [225 Pac. 370].)

In the present case the circumstances are very persuasive that the effect of the conduct of the defendant resulted in procuring or at least in substantially contributing to the alienation of the affections of Mrs. Rogers for her husband, and in causing the ultimate separation of the spouses.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.