[Civ. No. 9068.  First Appellate District, Division One.—March 28, 1935.]

FANNIE BERGER, Respondent, v. JEANNE S. LEVY, Appellant.

Walter McGovern for Appellant.

Elmer E. Robinson, H. Boyarsky and William A. Lahanier for Respondent.

KNIGHT, J.—The plaintiff, Fannie Berger, brought this action for damages against the defendant, Jeanne Levy, for the alleged alienation of the affections of plaintiff's husband, Emil Berger; and a jury returned a verdict in plaintiff's favor for $15,000.

Defendant was not present at the trial. She was in Arizona at the time, but was represented by counsel. Soon after the verdict was rendered she returned to California, secured the services of other counsel and presented two motions, one for a new trial and the other to set aside the judgment upon the grounds of fraud, mistake, surprise, inadvertence and excusable neglect. In support of said motions she filed a lengthy affidavit wherein she charged that Berger and his wife had conspired to institute the action and to bring about the trial thereof during her absence from the state; and in this connection she averred among other things that the attorney who represented her at the trial had been employed for her by Berger; that upon filing her answer said attorney assured her the case would never be brought to trial—that he would obtain a dismissal thereof, and later, under circumstances hereinafter stated, advised her to leave the state and to remain away as long as possible; that being thus assured the case would not be tried she followed such advice and went to Arizona where her relatives lived, and that after remaining there about six weeks she received word that the case had been tried and a verdict rendered against her. The motion for a new trial was denied conditionally upon the acceptance by plaintiff of a reduction in the amount of damages from $15,000 to $2,500; and she accepted the reduced amount. Thereupon the motion to set aside the judgment was denied, and defendant took two appeals, one from the judgment and the other from the order denying the motion to vacate the judgment. The grounds urged for the reversal are insufficiency of the evidence to support the verdict, and error in denying the motion to vacate the judgment.

■ The gist of a cause of action of this kind is the enticing or taking away of the husband or the wife and the alienation of his or her affections (*Humphrey* v. *Pope,* 122 Cal. 253 [54 Pac. 847]); and it has been held that the word ''entice'' means to lure, induce, tempt, incite or persuade a person to do a thing. It is sufficient if it be shown that the conduct of a defendant led to a separation of the spouses and was intentional and wrongful; and it is no defense that such conduct was not the sole cause of the separation and loss of affection, proof that it was the procuring or controlling cause being all that is required. (*Rogers* v. *Haines,* 104 Cal. App. 191 [285 Pac. 412].) ■ However, as declared in the leading case of *Scott* v. *O'Brien,* 129 Ky. 1 [110 S. W. 260, 130 Am. St. Rep. 419, 16 L. R. A. (N. S.) 742], it is well settled that there is no ground for action where a spouse voluntarily gives his or her affection to another, the latter doing nothing wrongful to win such affection. That is to say, in order to establish liability it must be shown that the defendant is the enticer, and mere proof of abandonment, or that the husband or wife may be maintaining an improper relation with another, is not sufficient. In this regard the court in that case goes on to say: ''In 15 American and English Encyclopedia of Law, page 895, the rule is thus stated: 'In order to sustain an action for the alienation of the husband's affections, it must appear, in addition to the fact of alienation or the fact of the husband's infatuation for the defendant, that there had been a direct interference on the defendant's part, sufficient to satisfy the jury that the alienation was caused by the defendant, and the burden of proof is on the plaintiff to show such interference.' Again, on page 866, it is said: 'But to maintain this action it must be established that the husband was induced to abandon the wife by some active interference on the part of the defendant.' In 3 Elliott on Evidence, section 1643, it is said: 'To entitle the plaintiff to recover in an action for alienating affections, the burden of proof is upon the plaintiff, and the plaintiff must show that there was a direct interference upon the part of the defendant, and that not only was there infatuation of the husband or wife for the defendant, but that the defendant by wrongful act was the cause of it.' In the case of *Waldron* v. *Waldron,* (C. C.) 45 Fed. 315, the court

in an elaborate discussion of the question said: ' . . . If the husband alienated his own affections from his wife, or if alienated by the plaintiff's own conduct, or both, without the interference of defendant, or if they were alienated by any other cause known or unknown, over which defendant had no control or exercised no intentional direction or influence, then the plaintiff, howsoever unfortunate or wronged, cannot recover damages from the defendant.' " (See, also, 13 R. C. L. 1464, and 30 C. J. 1123.)

In the present case the evidence established that plaintiff's husband took his departure from the family dwelling in February, 1932, which was about four months prior to the filing of the complaint herein, and that at the time of trial, on November 2, 1932, he was still living separate and apart from her; furthermore, that for about a year prior to such separation and apparently up to the time of the commencement of this action defendant, a personal acquaintance of the Berger family of some two years' standing, had been the recipient of Berger's attentions, some of which, at the beginning, were of a clandestine nature. But the record contains no affirmative evidence that defendant ever expressly suggested, encouraged or persuaded Berger to leave his wife; and as will hereinafter be seen, the circumstances from which the jury drew its conclusion that she had done so, appear to be more persuasive of the belief that Berger's action in moving out of the family dwelling was not influenced by any active interference on defendant's part, but was due entirely to his own voluntary act brought about solely by matrimonial differences which had been going on between Berger and his wife years before they ever met defendant. Consequently, when the evidence is tested by the legal rules above set forth, it becomes apparent that plaintiff did not present, as her counsel contend, a strong case; and while we cannot say that the state of the evidence is such as would justify us in holding as matter of law that the jury's conclusion is wholly unsupported, the fact remains that on account of defendant's absence from the trial, such conclusion was reached after hearing only one side of the case. ■ Therefore, in view of the apparent weakness of plaintiff's case, a serious question is presented as to whether the uncontroverted facts set forth in defendant's affidavit as to the circumstances under which she claims

the cause was brought to trial during her absence did not entitle her, as a matter of law, to the relief sought by her motion to set aside the judgment; and a fair consideration of this latter question would seem to require a review of the main features of the evidence.

It appears therefrom that the Bergers were married in Austria in 1899, and are the parents of twin daughters and a son, whose ages at the time of the trial were 31 and 29 years, respectively. They came to America about the year 1905, and after residing in New York for a while moved to Pittsburgh, where in 1911 Berger left his family and went to Canada, then to Seattle, and eventually in 1913 moved to Los Angeles. There is a dispute as to his reasons for having gone away. However, after arriving in Los Angeles, his wife and children, at his instance, rejoined him, and the following year, 1914, they moved to Oakland where they continued to reside up to the time of the trial of this action. During his residence in Oakland Berger engaged in various business enterprises, and up to 1929 was quite prosperous. Besides acquiring several pieces of valuable property, he operated a furniture store for some time with his son, and later purchased and conducted a general market. But in 1929, he began to suffer serious business reverses and gradually lost everything except the market and the family home; and in October, 1931, he made an assignment to his creditors of the market, but was allowed to conduct the same until June, 1932, when he was ousted. That same month, June, 1932, Mrs. Berger filed this action for damages against Miss Levy. As stated, Berger was not living at the family home at that time, nor had he been living there since the preceding February, although he continued to eat most of his meals with his family up to the time he was ousted from the market in June, 1932. At the time he quit the family dwelling it was occupied by his wife, the three children and a son-in-law to whom his daughter Rose had been recently married in New York. So far as the record shows, no divorce proceedings have ever been instituted by the Bergers, but soon after bringing the present action Mrs. Berger sued Berger for separate maintenance.

Miss Levy came originally from Arizona, where her near relatives continued to reside. She was reputed to be the

wealthy owner of copper mining interests in that state; but in her affidavit she denied that such was the fact. She met Berger's family early in 1930, and afterwards they became very friendly. She lived in an apartment house in San Francisco and the Bergers often visited her there. She also visited them frequently in Oakland, and occasionally spent the night or the week-end at their home. This social relationship ended, however, in March, 1931; and in February, 1932, about the time Berger took his departure from the family dwelling, Miss Levy moved to Oakland, where she continued to live up to September, 1932, when as stated she went to Arizona.

There is a sharp conflict in the evidence as to whether the Bergers ever lived harmoniously after arriving in this country; also as to whether, for several years prior to the time Berger moved out of the family dwelling he and his wife had any affection at all for each other. In this regard Mrs. Berger testified that up to the time they became acquainted with Miss Levy, Berger was a dutiful husband and father; that they lived happily and were reciprocally affectionate; and her testimony was supported generally by the children. But on cross-examination it was shown that for many years there had been frequent matrimonial disturbances, some of a violent nature, and that for approximately four years prior to their separation in February, 1932, Berger slept on a lounge or couch in another room. On the other hand, Berger, who was called as a witness on behalf of defendant, described Mrs. Berger as quarrelsome, fault-finding and extremely jealous, and stated that on account of her incompatible and contentious disposition their married life had been a most unpleasant one; that she wrangled with him continuously over financial and business matters, and quarreled with him incessantly over unfounded charges of paying undue attention to other women. In this connection he went on to relate, among other things, that while they were living in New York she threatened, in a jealous rage, to strike a young woman friend over the head with a chair; and that after they moved to Pittsburgh he was actually driven from home by the constant quarreling on the part of his wife over a woman with whom she falsely accused him of being too friendly. Continuing, he stated that after living apart for a couple of years he concluded

that on account of the children, a reconciliation was desirable, and for that reason alone he provided the transportation for his family to rejoin him in Los Angeles; but that soon after they moved to Oakland his wife resumed her quarrelsome and jealous attitude and continually charged him unjustly with paying undue attentions to other women; that ultimately, about four years prior to their final separation, her constant paroxysms brought about complete estrangement between them and a definite termination of their marital relations, at which time he changed his sleeping quarters to another room; that in February, 1932, he could stand her wrangling no longer, so he moved out.

In support of plaintiff's claim that Miss Levy alienated her husband's affections Mrs. Berger and her children testified that soon after Berger became acquainted with Miss Levy his attitude toward them began to change; that he often absented himself from the family home during the day and at night without explaining his whereabouts; and that eventually they discovered he was spending much of his time with Miss Levy. In this respect the evidence shows that he called on Miss Levy a number of times at her apartment in San Francisco; that on a few occasions, usually when Miss Levy's landlady was present, he dined there and the three went automobile riding; that at one time Berger and Miss Levy were seen in company with a woman friend leaving a theater, and at another time they were seen sitting alone in a miniature golf course. Testimony was given also by the son to the effect that Miss Levy frequently visited his father during the daytime at his furniture store in Oakland under the pretense of helping him carry on the business; and that on several occasions he saw them with their heads close together talking in undertones; that when he approached, Miss Levy pretended she was adjusting his father's collar or necktie; and that at the end of the day his father would drive her to their home or to the station. Other evidence was introduced showing that about a month before Berger quit the family dwelling Mrs. Berger found in his pocketbook a lock of hair which resembled Miss Levy's hair; that about the same time she found among his private papers a letter written by her husband to Miss Levy, at Arizona, telling her, among other things, ''to take good care'' of herself; also a few Christmas and birthday cards

which Mrs. Berger claimed were sent to her husband by Miss Levy; also a silhouette of a woman which she asserted was a likeness of Miss Levy. Furthermore, Miss Anne Berger testified that in May, 1931, which was about two months after the breach of the social relations between the Berger family and Miss Levy, she called on Miss Levy at her apartment in San Francisco and said to her: "You have been seeing my father without letting the family know anything about it and you are gradually undermining, you are gradually changing him, turning him away from his family, and I never thought that could have happened"; and that the only reply made by Miss Levy was, "I neither admit nor deny it." About nine months later, in February, 1932, Miss Levy moved to Oakland; and evidence was introduced showing that Berger frequently visited her there.

Only two witnesses were produced in behalf of defendant. One was a young woman employed in the Berger market who claimed to have heard Mrs. Berger say that Berger left home because of the existence of an unfriendly feeling between him and his married daughter. The other witness was Berger, who related the entire story of his turbulent married life. In this connection he stated in part that as a result of the constant quarreling there had been a total lack of affection between himself and his wife for several years; and he declared most positively that never at any time had Miss Levy suggested that he abandon his family, nor in any manner encouraged or persuaded him to do so; that he did not leave on her account at all but was actually driven from home by his wife—that her querulous disposition made it impossible for him to live with her any longer. Counsel for plaintiff did not see fit to interrogate Berger at all on cross-examination, nor did they offer any testimony in rebuttal.

The main uncontroverted facts appearing in defendant's affidavit which she filed in support of her motion to set aside the judgment were the following: She averred that on June 29, 1932, Berger called at her apartment in Oakland and told her his wife intended to sue her for a large sum of money for alienating his affections unless she compromised and settled with his wife; that she replied she had not been guilty of any wrongdoing, as he well knew, and consequently she would not pay any money whatever; that on the contrary

she would go directly to his wife and demand an explanation, whereupon Berger dissuaded her from doing so. Continuing, she averred that the next day, June 30, 1932, the complaint was filed and she was served with summons, immediately following which and on the same day Berger called again, saying he knew she had been served with the papers; and that taking possession of the papers he told her he would secure the services of an attorney, which he did; that subsequently she held two short conferences with said attorney, one on July 9, 1932, at which time she verified her answer; that at both conferences said attorney assured her that ''there was nothing to said action and that it was without merit and that he would succeed in having the same dismissed without the necessity of going to trial''; that on July 11, 1932, twelve days after the action was instituted, without demurring to the complaint, he filed the answer. Continuing, defendant averred that on September 15, 1932, she again visited said attorney's office, this time to complain about ''certain mysterious visits, calls and threats'' to which she was being subjected; and that said attorney advised that ''she should leave the jurisdiction'' of the court and ''remain away therefrom for as long a time as it would be convenient for her so to do''; that on September 29, 1932, in pursuance of such advice, she went to Arizona; that upon her return she ascertained that on July 12, 1932, the cause was set for trial for a later date and that during her absence, on stipulation of her attorney, the trial date was advanced. She also averred that at no time and especially when said attorney advised her to leave the state was she informed by him, nor did she know, that the cause had been set for trial; furthermore she averred that after her departure she received no message or notice of any kind until November 8, 1932, at which time she learned of the rendition of the verdict; and that thereupon she returned to California at once. With respect to the merits of the controversy defendant averred, among other things, that she never sought, gained nor possessed Berger's affections, nor in any way attempted to persuade or encourage him to leave his wife; that both Mrs. Berger and her husband repeatedly told her there had been no affection between them for years; that both sought to discuss with her their marital troubles but that she refused to listen to them; that Berger persisted

in calling on her occasionally, against her will, and she told him his visits were not welcome; that the ostensible object thereof seemed to be to obtain money from her with which to extricate himself from his financial difficulties; that consequently his visits became annoying and she asked him to discontinue them; that sometimes she would try to avoid him and at other times refused to see him at all. Furthermore, defendant denied ever having had any such conversation with Miss Berger as related by her, or ever having sent Berger any written communications whatever or having given him any kind of a picture or silhouette. The affidavit then goes on to set forth the evidence defendant claims she could and would produce if given a new trial, including the names of the witnesses and the nature of the testimony they and she would give, all of which appears to be pertinent and relevant to the issues.

Counter affidavits were filed by plaintiff's attorneys in controversion of any intimation of collusion between them and Berger or defendant's attorney; and it may be stated in passing that there is nothing whatever in the record to justify any such intimation. Counter affidavits were also filed by plaintiff and others relating to the merits of the case; and it would appear from some of them that the "mysterious visits and calls" of which defendant complained to her attorney were made by a process server, seeking to serve defendant with a subpoena to appear and give her deposition. However, no counter affidavits were filed by either Berger or said attorney; and consequently so far as the record shows there was no refutation whatever of the sworn statements made by defendant as to the circumstances under which she claims she was advised and induced to leave the state, nor as to the failure to notify her of the impending trial of the action. Therefore the statements so made by her stood wholly uncontradicted.

The general rule governing a situation of this kind, as it is stated in *McGuire* v. *Drew*, 83 Cal. 225 [23 Pac. 312], is that in order to entitle one who has failed to appear at the trial to relief on that ground, he must establish that his absence was without fault or negligence on his part; also that he has been injured by a trial in his absence, and that a different result would probably be reached if a new trial were had; and that this may be done by showing that

he could establish an entirely different case favorable to himself in the event a new trial is granted. (See, also, Hayne on New Trial and Appeal, sec. 76, p. 378.) As will be seen, the uncontroverted facts stated in defendant's affidavit seem to meet all of the foregoing legal requirements. It is our conclusion, therefore, that under the circumstances therein stated, the denial of defendant's application to fully present her side of the case to a jury amounted to a miscarriage of justice. (*Melde* v. *Reynolds,* 129 Cal. 308, 309 [61 Pac. 932]; *Sluman* v. *Dolan,* 24 S. D. 32 [123 N. W. 72]; *Warren* v. *Frank Gardner etc. Co.,* 96 Miss. 284 [51 So. 129]; *Anderson* v. *Graham,* 87 Okl. 278 [210 Pac. 281]; *Bentley* v. *Ben Williamson Hardware Co.,* 177 Ky. 799 [198 S. W. 232]; *Hinman* v. *C. H. Hamilton Paper Co.,* 53 Wis. 169 [10 N. W. 160].)

For the reasons stated the order denying defendant's motion to set aside the judgment is reversed, and the trial court is directed to grant the same upon the condition that defendant pay to plaintiff the expenses incurred by plaintiff at the former trial. (*Melde* v. *Reynolds, supra.*) Defendant will recover her costs of appeal.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1935.