Filed 4/25/16  Morales v. Falbo, Levy & Moresi CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ROGELIO V. MORALES, | |
| Plaintiff and Appellant, | G051643 |
| v. | (Super. Ct. No. 30-2014-00736496) |
| LAUGHLIN, FALBO, LEVY & MORESI, LLP, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Frederick Paul Horn, Judge.  Affirmed.

Rogelio V. Morales, in pro. per.

Law Offices of Melissa M. Ballard and Hector E. Salitrero for Defendant and Respondent.

\*          \*          \*

This is an appeal from a judgment of dismissal after the court sustained a demurrer. Plaintiff alleges that defendant Janeth Arias (named defendant in complaint, but not a party to this appeal) slapped plaintiff in the face and later used her influence with plaintiff's girlfriend to cause her to break up with plaintiff. Plaintiff sued not only Arias, but also her employer, defendant Laughlin, Falbo, Levy & Moresi (the Law Firm), alleging causes of action for assault and battery and intentional infliction of emotional distress. The court sustained a demurrer as to the Law Firm, finding the complaint did not state a cause of action against the Law Firm. Plaintiff appeals from the dismissal of the Law Firm. We affirm.

FACTS

Plaintiff made the following allegations in his second amended complaint.

Arias is an associate attorney at the Law Firm. Plaintiff alleged he sent Arias a gift card for Christmas, to which she replied, via her social media account, "*Thanks for the gift card. You shouldn't have.*" "And Merry Christmas."

About one month later, on January 22, 2014, plaintiff sent Arias an e-mail at her work address, threatening to file a restraining order against someone named Mireya, with whom plaintiff alleged he had a romantic relationship. Arias had previously represented Mireya in connection with an employment matter.

The following "Sunday, January 26, 2014, at approximately 2:45 a.m., on the sidewalk abutting the property located at the corner of Gard Avenue and Elmhurst Drive in Norwalk, California, Defendant Janeth Arias entered the Plaintiff's vehicle, without Plaintiff's consent, using violent speed, surprise and aggression, attempted to strike the Plaintiff's face with her right hand with violent force, thereby causing harm to Plaintiff." "Immediately after the Plaintiff was placed in great apprehension of a harmful contact to his person, Defendant Janeth Arias physically slapped Plaintiff's face and

2

person with her right hand with violence [*sic*] force, and yelled, '*How dare you fucking email me at work!*'" Plaintiff offers no explanation as to how or why Arias ended up in his car at such an odd hour on a Sunday.

Plaintiff alleges he suffered considerably as a result of being slapped in the face: "As a proximate result of the acts of Defendant Janeth Arias as alleged in the first and second causes of action, Plaintiff suffered substantial physical pain and suffering, as well as significant emotional trauma and resulted in the deterioration and demise of the plaintiff's romantic relationship with" Mireya. "As a further proximate result of the acts of Defendant Janeth Arias, Plaintiff was prevented from attending to his usual occupation as a solo practicing attorney for a period of approximately six months and continuing for an as yet undetermined period." "As a proximate result and substantial factor of the acts of Defendant Janeth Arias, plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his face and person, all of which injuries have caused, and continue to cause, plaintiff severe mental, emotional, and physical pain and suffering." "As a further proximate result of the acts of Defendant Janeth Arias, Plaintiff developed and continues to suffer from emotional trauma and depression and frequent periodic episodes of insomnia, anxiety, and panic. Plaintiff is informed and believes, and thereon alleges, that the injuries will result in some permanent disability to him." "As a further proximate result of the acts of Defendant Janeth Arias, Plaintiff developed and continues to suffer from severe headaches, physical fatigue, nausea, and dizziness." Plaintiff, however, did not allege any specific physical injuries suffered as a result of the slap.

Although plaintiff was able to salvage his romantic relationship with Mireya for several months notwithstanding threatening legal action against her, ultimately Arias was responsible for them breaking up several months later: "On or about June 13, 2014, Plaintiff received a letter from Mireya indicating she was ending her romantic relationship with the Plaintiff. The end of the romantic relationship between [Mireya] was proximately caused by the [assault and battery] because Defendant Janeth

3

Arias pressured Mireya to end the romantic relationship with Plaintiff by making her feel guilty because Defendant Janeth Arias has '*done so much for her*.'"

As to the Law Firm, plaintiff alleged he placed "over a dozen calls" to a partner/owner of the Law Firm over the course of two months starting in May 2014 (there is no explanation as to why he waited four months to begin informing the Law Firm). "All calls and attempts by Plaintiff to contact [the partner] went unanswered . . . ." Plaintiff alleged the Law Firm was liable on theories of respondeat superior, ratification, and negligent hiring/training.

In sustaining the Law Firm's demurrer, the court stated, "[T]he facts alleged are not sufficient to show the incidents alleged arose from defendant Arias' employment with the defendant law firm." "[P]laintiff cannot create an attorney-client relationship between Mireya and Arias in connection with plaintiff's dispute with Mireya by his own act of sending Arias an e-mail at her work e-mail address." "Plaintiff has no facts showing Arias or the defendant law firm in any way indicated they were representing Mireya in connection with plaintiff's threat to obtain a restraining order." The court went on to observe that "here, the assault occurred at 2:45 am in a car parked on a corner, circumstances which in no way suggest the altercation occurred in the course of the attorney's employment, nor would such a circumstance be foreseeable to the employer absent extraordinary circumstances."

DISCUSSION

Plaintiff contends the court erred in sustaining the demurrer. He contends the facts alleged support liability on theories of respondeat superior, ratification, and negligent hiring or training. We disagree.

4

"On appeal from a judgment dismissing an action after sustaining a demurrer . . . , the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)

We begin by addressing plaintiff's contention that the Law Firm is liable in respondeat superior. "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment. [Citation.] Equally well established, if somewhat surprising on first encounter, is the principle that an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts. [Citations] What, then, is the connection required between an employee's intentional tort and his or her work so that the employer may be held vicariously liable? [¶] It is clear, first of all, that California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296-297, fn. omitted.) "While the employee thus need not have intended to further the employer's interests, the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work." (*Id.* at p. 297.) "The nexus required for respondeat superior liability — that the tort be engendered by or arise from the work — is to be distinguished from 'but for' causation. That the employment brought tortfeasor and

5

victim together in time and place is not enough.  We have used varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts):  the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be '"inherent in the working environment"' [citation] or '"typical of or broadly incidental to the enterprise [the employer] has undertaken"' [citation].  [¶]  Looking at the matter with a slightly different focus, California courts have also asked whether the tort was, in a general way, foreseeable from the employee's duties.  Respondeat superior liability should apply only to the types of injuries that '"as a practical matter are sure to occur in the conduct of the employer's enterprise."'  [Citation.]  The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought."  (*Id.* at pp. 298-299.)

Two facts demonstrate that the alleged assault in this case was not engendered by Arias's work.  First, the very statement Arias uttered — "How dare you fucking e-mail me at work!" — demonstrates that this incident was not engendered by her work.  To the contrary, Arias was upset precisely because plaintiff improperly involved her work in what she deemed not to be a work matter.  Second, as the court noted, the strange circumstance of Arias being in plaintiff's car at 2:45 a.m. on a Sunday morning suggests this was not work related, particularly since the Christmas gift and social media exchange between plaintiff and Arias suggest there was a preexisting relationship.

Nor do we think the alleged harms were foreseeable to the Law Firm, or inherent to Arias's employment.  Perhaps a physical altercation between opposing counsel at a deposition could be foreseeable.  But we feel safe in assuming Arias was not in plaintiff's car at 2:45 a.m. on a Sunday morning for purposes of a deposition.  More generally, it was not foreseeable that Arias would end up in an opposing party's car at such an odd hour, under unexplained circumstances, and slap that person for sending an

6

e-mail to the associate's work address.  Nor is it foreseeable that an associate would have such influence over a client that she could cause the client to break up with a romantic partner by using guilt over having done so much for the client.  Consequently, the Law Firm is not liable in respondeat superior.[1]

Plaintiff's next contention is that the Law Firm ratified Arias's assault and battery.  "[A]n agent's originally unauthorized act may be ratified by implication where the only reasonable interpretation of the principal's conduct is consistent with approval or adoption. [Citation.]  For example, an employer's failure to discharge an employee after learning of the employee's misconduct may be evidence of ratification." (*Allied Mutual Ins. Co. v. Webb* (2001) 91 Cal.App.4th 1190, 1194.)  "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery.  [Citations.]  Whether an employer has ratified an employee's conduct is generally a factual question." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 169-170.)

---

[1]   Additionally, we note that plaintiff's cause of action for intentional infliction of emotional distress is a disguised cause of action for alienation of affections, a cause of action that no longer exists (Civ. Code, § 43.5), and that, in any event, only applied between spouses (*Berger v. Levy* (1935) 5 Cal.App.2d 554, 556 ["The gist of a cause of action [for alienation of affection] is the enticing or taking away of the husband or the wife and the alienation of his or her affections"]; s*ee Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 267 ["[T]he 'anti-heart-balm statute' precludes . . . the . . . recharacterization of the abolished amatory cause of action as a form of negligence or some other acknowledged tort.  [Citation.]  A plaintiff cannot, in other words, camouflage an abolished action with the catchwords of the common law"].)

All of the cases plaintiff relies on involve torts occurring at the workplace. *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 839, for example, involved ongoing sexual harassment at a workplace where the supervisor was informed of the misconduct but took no action against the perpetrator and instead discharged the victim. And in *McChristian v. Popkin* (1946) 75 Cal.App.2d 249, 252, a theatre employee assaulted a patron at the theatre, and after a full investigation, the employee was retained. Here, the alleged assault took place at 2:45 a.m., on a Sunday in a vehicle in Norwalk having nothing to do with the Law Firm's business. The only other allegation concerning ratification is that plaintiff left several voice messages for a partner at the Law Firm *four months after the alleged assault*. These circumstances cannot be reasonably interpreted as ratification of the alleged assault.

Plaintiff's final theory of liability is that the Law Firm negligently hired or trained plaintiff. "An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." (*Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564.) "'Liability for negligent hiring . . . is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees.' [Citation.] Negligence liability will be imposed on an employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.) Plaintiff's theory of negligent hiring/training fails because he did not allege any facts, as opposed to legal conclusions, indicating that the Law Firm should have known Arias had a violent predisposition.

8

DISPOSITION

The judgment is affirmed.  The Law Firm shall recover its costs incurred on appeal.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.